Paul TAYLOE and Jimmie White,
Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 13, 1960.

S. M. Ward, Scott E. Duff, Hazard, for appellants.

John B. Breckinridge, Atty. Gen., Paul E. Hayes, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

We sustain the motion for an appeal from a judgment of conviction of Paul

Tayloe and Jimmie White of the offense of "holding and flourishing" a deadly weapon, described as a pistol, and pointing the same at a "picket line" composed of five named persons and others. KRS 435.200. A fine of $50 was imposed upon each defendant. While the evidence was to the effect that different and distinct offenses were committed by the respective defendants, their joint indictment and trial were not questioned.

The acts charged occurred during a strike of miners in Perry County and elsewhere in Eastern Kentucky. The evidence reflects the extreme violence which was, as well, of such notoriety as to come within the scope of common knowledge. A picket line was on duty at a railroad switch for the purpose of preventing cars being placed for the loading of coal at a mine operated by a company of which Tayloe was general manager. White had been, or was then, a guard or watchman. The weak proof of guilt was refuted by impressive evidence of innocence. But we do not find it necessary to pass on the point that the verdicts were flagrantly against the evidence.

The appellants maintain that the trial court committed prejudicial error in overruling their motion upon the ground of implied bias that no person who was a member of the United Mine Workers of America, a labor organization involved in the strike, or one whose husband or close relative was a member, should be permitted to serve on the jury, and in not excusing upon individual challenges for cause veniremen who revealed on voir dire their close connection with the labor union and its members. The defendants exercised the three peremptory challenges allowed in misdemeanor cases by the Criminal Code of Practice, § 203. As a consequence of the court's ruling, the jury contained two jurors whose husbands were on a strike picket line, another whose son-in-law was on duty at the place where the alleged acts occurred, and two or three jurors who were members or whose husbands were members of the United Mine Workers.

The Criminal Code of Practice provides for challenges for cause of persons called for jury service (a) for actual bias, which is defined as being "the existence of such a state of mind on the part of the juror, in regard to the case, or to either party, as satisfies the court, in the exercise of a sound discretion, that he can not try the case impartially and without prejudice to the substantial rights of the parties challenging," § 209; and (b) for implied bias, which is to be presumed from seven enumerated conditions, § 210. In their several voir dire examinations the jurors had disclaimed any prejudice or bias and stated they could give the defendants a fair trial. Nevertheless, the conditions were such that their connections would probably subconsciously affect their decision of the case adversely to the defendants. It is always of vital importance to the defendant in a criminal prosecution that doubt of unfairness be resolved in his favor.

None of the veniremen came within the enumeration of Section 210 of the Criminal Code of Practice. But the statutory provisions do not mean that all persons except such as are expressly excluded are qualified to serve. A juror may be challenged on common-law grounds in the absence of a statutory provision to the contrary. See 31 Am.Jur., Jury, § 158 and Annotation, Statutory grounds for challenge of jurors for cause as exclusive of common-law grounds, 64 A.L.R. 645. As stated in Halleron v. Carrithers Creamery, Ky., 239 S.W.2d 92, 94, "Obviously, the purpose of the right of challenge for cause is to prevent an incompetent, partial, biased and otherwise disqualified person from serving as a juror. The court's power to reject for cause is not confined to enumerated grounds of challenge, but may be exercised for any cause which the court in its discretion deems sufficient to disqualify."

It is recognized, of course, that bias or prejudice which affect the ability of a juror to give a fair trial may arise from

such a variety of causes that determination by the court depends on the facts and circumstances of the particular case. We declared in Pennington v. Commonwealth, Ky., 316 S.W.2d 221, 224, "It is the probability of bias or prejudice that is determinative in ruling on a challenge for cause." We have many times stated that a party charged with a criminal offense is entitled to be tried by a fair and impartial jury composed of members who are disinterested and free from bias and prejudice, actual or implied or reasonably inferred. This principle of justice is as old as the history of the jury system.

In Pennington v. Commonwealth, supra, Ky., 316 S.W.2d 221, we held that a new trial should have been granted the defendant who was convicted of voluntary manslaughter because one called for jury service, although not related to the man killed, was a first cousin of the principal prosecuting witness, who had participated in and had been wounded in a general affray at his home in which the homicide occurred. This was not within the statutory category of disqualification, but we regarded the conditions as bringing the juror under the classification, of one impliedly or presumably biased so as to have supported a challenge for cause.

Now, we should not be understood as holding that a member of a labor organization or any other group is disqualified from sitting as a juror in a case merely because his fellow members were involved. See 31 Am.Jur., Jury, § 202; Annotations, 31 A.L.R. 411, 158 A.L.R. 1361. Although stated in the negative, it is laid down in substance and effect in 50 C.J.S. Juries § 229, that where it is shown that an organization of which a venireman was a member is in some manner interested in or connected with the prosecution of the case, he should be regarded as incompetent to serve on the jury. It was revealed to the trial court that the circumstances of the prosecution grew out of and were closely related to the labor strike in which there was violence between the Union and the mine operators. This is the determinative point. If the court was not aware of this at the time of the challenge, he was made aware of it during the course of the trial and should have sustained the motion for a new trial upon the ground of disqualification of a half of the jurors.

The judgment is reversed.