Essie Darrell CALDWELL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

June 15, 1982.

Jack Emory Farley, Public Advocate, Rodney McDaniel, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Suzanne Guss, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENS, Justice.

Appellant, Essie Darrell Caldwell, was convicted of murder and received a sentence of twenty years imprisonment. His appeal is before us as a matter of right.

Appellant shot and killed Ray Maggard on January 4, 1981. At trial his defense was self-protection, and an appropriate instruction to that effect was submitted to the jury. He also requested instructions on second degree manslaughter and reckless homicide on the grounds that the jury could reasonably believe from the facts presented that appellant acted "wantonly or recklessly" in believing that he was justified in shooting Maggard. The trial court declined to give the instructions.

On this appeal, appellant argues that the trial court committed reversible error in refusing to give the requested instructions. He also argues that the trial court erred in refusing to strike two prospective jurors for cause.

The basis of appellant's first assignment of error is KRS 503.120(1):

"When the defendant believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under KRS 503.050 to 503.110 *but the defendant is wanton or reckless in believing the use of any force, or the degree of force used, to be necessary* or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by these sections is unavailable in a prosecution for an of-

fense for which wantonness or recklessness, as the case may be, suffices to establish culpability." (emphasis added). Palmore's *Kentucky Instructions to Juries* § 10.26, Comment (1975) states that the effect of KRS 503.120(1) is to require a manslaughter and reckless homicide instruction when:

"... a defendant has used deadly force under circumstances which he claims to have justified self-defense *and the evidence would support a finding that if he had the necessary beliefs for this defense he was wanton, or reckless in so believing and acting."* (emphasis added).

In answering appellant's contention we must, therefore, determine whether there was sufficient evidence in the record to support the belief that appellant was wanton or negligent in his belief that he was justified in the shooting. Our analysis of the evidence leads us to the conclusion that this question must be answered in the negative.

Appellant and Vera Becknell went to Maggard's residence between 6:00 and 6:30 p. m. on the evening in question. The purpose of the visit was to trade shotguns and to pick up some poultry. Maggard, who had done considerable drinking, asked Becknell to try on several dresses and appellant agreed to purchase them. Appellant and Maggard argued about the ownership of a battery light in Maggard's possession, at which point Maggard pulled a pistol from his back pocket and stated, "I killed a man night before last with this thirty-eight, and now I am going to kill you, you son of a bitch." A conversation ensued and Maggard replaced the gun in his rear pocket. As Becknell walked past Maggard, he attempted to undress her. Appellant stated that he and the lady were leaving. As they walked away, according to appellant, Maggard stated, "No, you son of a bitch, you ain't going to leave," and then reached for the pistol. Appellant testified that, he, fearing for his life, picked up a shotgun and shot Maggard in the back of his head.

All of appellant's testimony was intended to present the defense of self-protec-

tion. He testified that he was afraid for his life and shot Maggard because of this fear. An instruction on self-protection was given and the jury chose not to believe appellant. There is absolutely no evidence that would permit a jury to believe that appellant's belief that he was in danger was either wanton or negligent such as would mandate the giving of the instruction for manslaughter or reckless homicide.

Appellant cites *Blake v. Commonwealth,* Ky., 607 S.W.2d 422 (1980) as being controlling on this appeal. We do not agree. In *Blake,* where we reversed the trial court for failure to give similar instructions, the appellant and the victim had had a fight six weeks prior to the killing, at which time the victim threatened to kill Blake. On the night in question, the victim was working in a bootlegging establishment and it was generally known that a shotgun was kept near the drive-in window. Blake drove up to the building and shot the man because he thought he saw the victim grabbing the shotgun and believed the man was going to shoot him. In fact, no shotgun was found in the building. We decided in that case, under those facts, that:

"it certainly presented a jury question as to whether or not Blake was wanton or reckless in his belief" (that he was in danger). *Id.,* at p. 423.

In the present case, all appellant's evidence points to the fact that the victim had a pistol in his possession which he brandished and with which he threatened appellant. There is no evidence of wantonness or negligence in this case that would justify the instruction.

We decide that under the evidence the jury could only find that the appellant was guilty of murder (as it did) or was not guilty by reason of self-protection.

We will now address appellant's second allegation of error. During the voir dire examination the court asked the panel, generally, whether any of them knew of a reason why they couldn't listen to the evidence and render a fair and impartial verdict. Jean Begley informed the court that

she knew the Maggards (the family of the deceased) "real good." The court then addressed her:

Court:

"That is not the point. Can you lay aside this and listen to the testimony and try the case from that and that alone?

Mrs. Begley:

Yes. I know some of them. I don't know if it would be embarrassing to me or not to serve on the jury. I just know some of the people. *I could give a fair trial. I could go by the testimony.*" (emphasis added).

Defense counsel moved to strike Mrs. Begley for cause. The trial court overruled the motion because she had said she could give a fair trial.

In response to defense counsel's question whether any prospective juror had been represented by the prosecutor in a civil case, Mrs. Fannie Mosley responded that County Attorney Phillip Lewis was representing her husband in a civil case. Defense counsel asked Mrs. Mosley if this fact would cause her any "embarrassment" if she voted not guilty, and she said that it would. The court then spoke to the entire panel:

"Members of the Jury, I think the Court probably explained to the jurors that we try cases according to the evidence and the law. You do not try a case because Mr. Lewis ... (is) involved. That is not the issue. The defendant is entitled to legal counsel as good as he can get, and so is the Commonwealth. The fact that some of these lawyers represent you in civil actions ... would that create something in your mind that you would have to go against the law and evidence. *Because Phillip Lewis is county attorney and represented you in a civil action does that have any bearing on you in deciding what the evidence would be?*

Mrs. Mosley:

*No, I understand that.*" (emphasis added).

Defense counsel's motion to strike Mrs. Mosley for cause was overruled by the trial court. Subsequently, both prospective jurors were struck by defense counsel by the exercise of peremptory challenges.

The determination of whether to exclude a juror for cause lies within the sound discretion of the trial court. *Peters v. Commonwealth*, Ky., 505 S.W.2d 764 (1974). Unless the action of the trial court is clearly erroneous, we will not reverse it. *Scruggs v. Commonwealth*, Ky., 566 S.W.2d 405 (1978). Bias and preconceived ideas must be proven by the party alleging it, *Watson v. Commonwealth*, Ky., 433 S.W.2d 884 (1968).

In this case, even though the initial impression of both prospective jurors gives rise to a limited doubt of their ability to serve on the jury, subsequent questions and explanations by the trial court removed doubt and, in both instances the jurors all clearly stated that they could put away any doubts and render a fair and impartial verdict according to the law and the evidence. Under this state of facts, we cannot say that the trial court was clearly erroneous, and we therefore will not disturb its decision.

The judgment of the trial court is affirmed.

All concur.