Robert David MARSCH, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 86–SC–434–MR.

Supreme Court of Kentucky.

Sept. 24, 1987.

Modified Jan. 21, 1988.

Robert Cetrulo, Jr., Appellate Public Advocate, Covington, for appellant.

David L. Armstrong, Atty. Gen., Daniel E. Cohen, Asst. Atty. Gen., Frankfort, for appellee.

LAMBERT, Justice.

This is a matter of right appeal from the judgment of the Hancock Circuit Court sentencing appellant to sixty-five years imprisonment upon his conviction of murder and arson. The principal claim of error concerns jury selection.

Appellant contends that the trial court abused its discretion in failing to sustain his motions to excuse certain prospective jurors for cause. He argues that as a result of the trial court's error in this respect, he was required to exhaust his peremptory challenges to eliminate as many unqualified jurors as possible, but was nevertheless unable to eliminate all prospective jurors who should have been excused for cause. He further argues that this resulted in the *de facto* denial of peremptory challenges.

Appellant specifically contends that ten prospective jurors were disqualified by reason of a "close relationship" with the victim or his family, by reason of a newspaper story published during jury selection and earlier newspaper accounts published shortly after the crime occurred, by reason of a blurted-out statement by a prospective juror, or by reason of the prosecutor's definition of reasonable doubt during the *in camera* voir dire examination of a prospective juror.

The record reveals that appellant moved the court to excuse each of the ten prospective jurors for cause, that his motion as to each was overruled, and that he subsequently exercised all of his peremptory challenges to remove eight of the ten from the panel. Appellant's practice satisfied the requirement that peremptory challenges must be exhausted before complaint may be heard concerning jury selection.

See *Rigsby v. Commonwealth*, Ky., 495 S.W.2d 795 (1973) and *Calvert v. Commonwealth*, Ky.App., 708 S.W.2d 121 (1986). It is apparent that appellant desired to excuse all of the ten prospective jurors and would have done so but for the unavailability of additional peremptory challenges. Two jurors who were challenged for cause actually served upon the jury because appellant's peremptories had been exhausted and he could not excuse them. If any one of the jurors he unsuccessfully challenged for cause and had to excuse by peremptory should have been excused for cause, the error of the court in not excusing that juror resulted in appellant's having to needlessly use a peremptory challenge. He was therefore deprived of the ability to use that peremptory challenge to strike either of the two jurors who sat on the panel whom he would otherwise have stricken peremptorily. Therefore, if the trial court erred in overruling his motion to excuse any one of the ten for cause, appellant's right to challenge peremptorily was infringed and we must review his claims of error on the merits.

During that portion of voir dire examination which took place in open court, one prospective juror commented that he had served on a jury which had previously convicted appellant of another offense. Defense counsel moved the court to dismiss the entire panel and this motion was overruled, but the juror who made the comment was excused. The panel was then discharged for the evening. The next morning, the *Owensboro Messenger and Inquirer*, a newspaper of wide circulation in Hancock County, published an article which appeared under the headline "Marsch Trial Halted Temporarily." The article disclosed that "Court records show Marsch was convicted on March 26, 1984, for manufacturing less than eight (8) ounces of marijuana, a misdemeanor. He was sentenced to one hundred and twenty (120) days in prison." The statement made in open court and the Owensboro newspaper article prompted the court to order completion of voir dire *in camera*.

When voir dire examination was resumed, a prospective juror, Mary Baker testified that she had read several newspaper articles concerning the crimes, had seen photographs of the burned car, and had heard the blurted-out statement in open court and understood it to be in reference to the appellant. She said: "It seemed they had a lot of evidence (against Marsch)....At first (I) thought that he probably was (guilty)." This prospective juror also testified that her husband was a deputy coroner in Hancock County and that she had discussed the case with him. The trial court overruled the motion to excuse this juror for cause, but she was removed by appellant's peremptory challenge.

Prospective juror J.K. Kennedy heard and understood the blurted-out statement in open court. His wife and the murder victim were second cousins and he went to the funeral home to express his condolences to the victim's family. He also testified that he had known the victim since he was a teenager and had worked with him in church. The trial court overruled the motion to excuse this juror for cause, but he was removed by appellant's peremptory challenge.

Prospective juror Florence Brandell testified that she had read several newspaper articles concerning the crime, that her husband is a third cousin to the victim, and that she went to the funeral home to express her sympathy to the family. The trial court overruled the motion to excuse this juror for cause, but she was removed by appellant's peremptory challenge.

Prospective juror James D. Gabbard testified that he had read the newspaper article relating to appellant's past conviction and had read several earlier newspaper articles concerning the crime. He also testified that he had discussed the case with Mr. Driskill, a person who was scheduled to testify for the Commonwealth. He stated that he and Driskill had expressed opinions about the guilt or innocence of appellant. When asked his opinion as to whether or not appellant was guilty, he said: "I have my doubts one way or the other. One time maybe he was guilty and maybe he wasn't guilty." The trial court overruled the motion to excuse this juror for cause, but he was removed by appellant's peremptory challenge.

Four other prospective jurors against whom motions were made and overruled testified that they had read the newspaper articles, or discussed the case, or were acquainted with the victim or members of his family. These persons were likewise removed by appellant's peremptory challenges.

Prospective juror Diane Carter was present when the blurted-out statement was made in open court, but she did not understand it to have any reference to appellant. She did not read the newspaper article which disclosed appellant's past conviction, but had read earlier newspaper articles about the crime and remembered some of the facts as reported. When asked if she had discussed the case with anyone, she testified that a girlfriend with whom she worked had discussed the case with her and expressed the opinion that appellant was guilty. She also overheard two other prospective jurors discussing the case, one of whom said he thought appellant would "plead insanity." The trial court overruled the motion to excuse this juror for cause and she was seated on the jury.

Finally, prospective juror Edward Kirk appeared to be fully qualified. During voir dire examination, however, and over objections which were made and overruled, the attorney for the Commonwealth engaged at length in a discussion of reasonable doubt. He asked Kirk if he equated "beyond a shadow of a doubt" with "reasonable doubt." He provided an example using himself as a hypothetical witness to an accident and suggested to the prospective juror that his hypothetical testimony would satisfy the "reasonable doubt" standard, but might not eliminate any possibility of doubt. Finally, the attorney for the Commonwealth explained that there was a significant distinction between being convinced beyond a reasonable doubt and being convinced beyond all or a shadow of a doubt. The trial court overruled appel-

lant's motion to excuse this juror for cause and he was seated on the jury.

In addition to the voir dire testimony summarized herein, all of the prospective jurors also testified in substance that they could disregard any knowledge or opinions which they may have had and decide the case solely on the evidence presented in court.

In *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985), this Court held that the existence of a "close relationship" was sufficient to require the court to sustain a challenge for cause and excuse the juror. We quoted with approval from *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4, 7 (1981) as follows:

> [I]rrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses.

In *Ward,* we concluded:

> Once that close relationship is established, without regard to protestations of lack of bias, the court should sustain a challenge for cause and excuse the juror. We have no fault to find in regard to the ex-brother-in-law or even the distant cousin and we trust that, under this statement of principle, no uncles will survive the challenge for cause on retrial.

■ In the case at bar, two members of the prospective jury panel who were not excused for cause were married to persons who were second or third cousins of the victim. In addition, these prospective jurors demonstrated some additional relationships with the victim or his family by visiting the funeral home to express condolences and in one instance, having known the victim since he was a teenager and through work with him in church. Despite these jurors testimony that they could be impartial and render a verdict based solely on the evidence, we believe a close relationship as described in *Ward* was shown to exist.

■ Two other prospective jurors demonstrated considerable knowledge of the facts of the case and had earlier formed opinions as to appellant's guilt. One of these persons was the wife of a deputy coroner and she and her husband had discussed the case. Both had read several newspaper articles about the crime, engaged in discussion of it, and formed and expressed opinions. While the formation and expression of earlier opinion may not, standing alone, be sufficient to require disqualification under the standard set forth in *Peters v. Commonwealth*, Ky., 505 S.W. 2d 764 (1974), we believe the additional facts applicable to these prospective jurors required their disqualification.

From her testimony, it appears that juror Diane Carter had been exposed to some discussion of the case. While she was not *per se* disqualified under the standard in *Peters v. Commonwealth, supra*, it is clear by his motion to excuse for cause that defense counsel considered her to be an undesirable juror, probably as a result of her friend's comment on appellant's guilt and the overheard statement from another prospective juror. Had appellant not been required to use his peremptory challenges to eliminate other jurors he regarded as unqualified, Diane Carter would almost certainly have been excused by means of a peremptory challenge.

■ Prospective juror Edward Kirk was otherwise qualified. He was disqualified, however, by the Commonwealth Attorney's clear-cut violation of our rule in *Commonwealth v. Callahan*, Ky., 675 S.W.2d 391 (1984), wherein we said:

> ... [W]e can hardly condone a client-serving definition by defense counsel or prosecutor in either voir dire, opening statement or closing argument. As stated in *Taylor*, [*v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978)], *supra*, "... arguments of counsel cannot substitute for instructions by the court." We do not intend by this holding that counsel cannot point out to the jury which evidence, or lack thereof, creates reasonable doubt, but all counsel shall refrain from any expression of the mean-

ing or definition of the phrase "reasonable doubt."

In the case at bar, appellant was on trial for a highly-publicized crime in a small, rural county. It was his right, as it is with every person accused of a crime, to be tried by a fair and impartial jury. RCr 9.36. The testimony of several prospective jurors was sufficient to create a legitimate doubt as to their impartiality. Their statements, given in response to leading questions, that they would disregard all previous information, opinions and relationships should not have been taken at face value. As we said in *Randolph v. Commonwealth*, Ky., 716 S.W.2d 253, 255 (1986):

> Even where jurors disclaim any bias and state that they can give the defendant a fair trial, conditions may be such that their connection would probably subconsciously affect their decision in the case. It is always vital to the defendant in a criminal prosecution that doubt of unfairness be resolved in his favor.

See also *Pennington v. Commonwealth*, Ky., 316 S.W.2d 221 (1958). In *Tayloe v. Commonwealth*, Ky., 335 S.W.2d 556, 558 (1960), we restated an ancient principle of law which provides the necessary guidance to trial courts in ruling on challenges for cause:

> We have many times stated that a party charged with a criminal offense is entitled to be tried by a fair and impartial jury composed of members who are disinterested and free from bias and prejudice, actual or implied or reasonably inferred. This principle of justice is as old as the history of the jury system.

In final analysis, several prospective jurors were in possession of information or occupied such a relationship to the victim or his family as to create a reasonable inference of prejudice. In an effort to minimize this perceived prejudice, appellant used all of his peremptory challenges to remove jurors against whom motions to excuse for cause had been made and overruled. Having thus preserved the issue, to obtain a reversal for infringement of his right to exercise peremptory challenges, appellant need only show that the trial court erred in overruling any one of his challenges for cause. RCr 9.40.

Appellant's other assignments of error have been reviewed and found to be without merit, harmless, or unlikely to recur upon retrial.

For the foregoing reasons, the judgment is reversed and this cause remanded for a new trial.

STEPHENS, C.J., and GANT and VANCE, JJ., concur.

LEIBSON, J., concurs by separate opinion.

STEPHENSON, J., dissents by separate opinion in which WINTERSHEIMER, J., joins.

LEIBSON, Justice, concurring.

I concur in the Majority Opinion as originally written. However, the modification is unnecessary and confusing.

The modification may be misinterpreted as changing the law to require that a party who has been improperly denied a challenge for cause must somehow prove that he needed and would have used more peremptory challenges before he can complain that the trial judge erred in refusing his challenge for cause.

The Modification to the Opinion suggests that the record here was sufficient to prove that more peremptory challenges were needed because two persons whom the defendant attempted to challenge for cause remained on the jury after the peremptory challenges were exhausted.

This leaves the mistaken inference that, had the defendant been able to utilize his peremptory challenges to exclude all who were unsuccessfully challenged for cause, the error in failing to sustain challenges for cause would be considered harmless.

There is no rule that a party must introduce proof that he needs more peremptory challenges before he can complain that the error in refusing to sustain a challenge for cause was prejudicial. At least there has been no such rule until now. A more correct premise, and one closer to the truth, is

that when a party has exercised all of his peremptory challenges, if he had to utilize one or more peremptory challenges to excuse jurors who should have been excused for cause, that party needed those peremptory challenges of which he has been deprived; that he would have utilized all of his peremptory challenges had they been available. A party has no grounds to ask for more challenges from a judge who has denied the party challenges for cause. We do not as a rule require what is at best an exercise in futility, and at worst may be viewed as arguing with the judge about his ruling.

The Petition for Rehearing should be denied. The modification confuses rather than clarifies the Opinion.

STEPHENSON, Justice, dissenting.

As I read the majority opinion, it is based on infringing a defendant's right to exercise peremptory challenges. I do not think we should reverse a case on that basis.

The discussion apparently assumes legal bias on the part of jurors not excused for cause. There is reliance upon *Ward v. Commonwealth.* In my dissent in *Ward,* I predicted that enlarging automatic strikes to relationships to lawyers, witnesses, etc., would be a real troublemaker. It is here. Excusing a prospective juror for cause constitutes a legal inference of bias or prejudice in the case.

This case is enlarging this presumption of bias beyond *Ward* and effectively takes away from the trial courts the formerly recognized discretion in seating a juror after being satisfied that a prospective juror's answers under oath qualified a juror to sit and render a fair and impartial verdict.

The Criminal Code of Practice No. 210 contemplated implied bias as to relationship to the accused or the victim, etc. Traditionally, we have, aside from relationship, knowledge of the case, or expressed opinion as to guilt, left the question of excusing for cause to the discretion of the trial court.

We have required that questions of familiarity with the case, witnesses, attorneys, etc., be answered truthfully in order that a defendant may exercise his peremptories.

If we are to engage in selecting jurors, we should set out all of the categories which we regard as inferring bias and prejudice and not do this piecemeal.

In *Caldwell v. Commonwealth,* Ky., 634 S.W.2d 405 (1982), we stated that the determination of whether to exclude a juror for cause lies within the sound discretion of the trial court. I wonder about the efficacy of *Caldwell* in view of the majority opinion.

Accordingly, I dissent.

WINTERSHEIMER, J., joins in this dissent.