Earl Flint ALEXANDER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–SC–308–MR.

Supreme Court of Kentucky.

May 27, 1993.

Rehearing Denied Sept. 2, 1992.

Frank W. Heft, Jr., Public Defender, and Bruce P. Hackett, Asst. Public Defender, Louisville, for appellant.

Chris Gorman, Atty. Gen. and Lana Grandon, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENS, Chief Justice.

Appellant was indicted by a Jefferson County Grand Jury for the rape and sodomy of his seven year old stepdaughter, A.C. The first trial of appellant ended in mistrial. At the second trial the jury was instructed on rape in the first degree, with sexual abuse as a lesser included offense, and two counts of sodomy in the first degree. The jury found appellant guilty of rape in the first degree and guilty of one count of sodomy in the first degree. A jury poll revealed that the not guilty verdict as to the second count of sodomy was due to a failure of proof beyond a reasonable doubt as to that charge. The jury recommended, and the judge imposed, twenty (20) years on each offense, to run consecutively.

A.C. testified that on July 2, 1990, when her mother was in the hospital giving birth, appellant raped and sodomized her. Appellant denied the allegations and asserted that A.C. fabricated such charges due to her jealousy of appellant. The facts will be discussed in more detail as specific issues are reviewed.

The issues considered by this Court are as follows: (1) whether appellant was denied a fair trial due to general prosecutorial misconduct; (2) whether it was reversible error for the investigating detective to testify that in her opinion the alleged victim was telling the truth; (3) whether the Commonwealth's cross-examination of appellant's job status was unduly prejudicial; (4) whether testimony by a social worker as to what the alleged victim told her was unduly prejudicial; (5) whether it was prejudicial error for the examining doctor to testify as to the ultimate issue in the case; and (6) whether the trial court erred when it refused to strike for cause two venirepersons who expressed reservations about whether they could sit impartially on the case.

A majority of this Court does not deem that the first three issues constitute reversible error and would affirm as to these issues. However, a majority does find that the last three issues constitute prejudicial error and reverses as to these issues.

Appellant raised additional issues. However, after consideration of those issues, we have determined that they do not merit discussion.

## I. GENERAL PROSECUTORIAL MISCONDUCT

Appellant asserts that throughout the trial the Commonwealth engaged in a pattern of misconduct which denied appellant a fair trial. In addition to the alleged errors discussed subsequently in this opinion, appellant cites as prosecutorial misconduct: (1) the Commonwealth's comment in voir dire that the Commonwealth represented the community and defense counsel did not; (2) the Commonwealth's derogatory comments in opening statement concerning A.C.'s mother; (3) the Commonwealth's comment in opening statement that Dr. Pope would give a diagnosis of sexual abuse; and (4) the Commonwealth's improper comments on jury instructions and defense counsel's actions.

The trial court sustained numerous objections by appellant's counsel and gave admonitions to the jury when appropriate. "[A] trial of this magnitude will invariably be marred with occasional minor or surface knicks which, when cured by the trial court, cause no substantial error." *Stanford v. Commonwealth*, Ky., 734 S.W.2d 781, 791 (1987).

In reviewing the actions of lower courts, appellate courts "must focus on the overall fairness of the trial, and not the culpability of the prosecutor." *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407, 411, 412 (1987). Alleged errors are not to be considered in a vacuum. We must consider the Commonwealth's conduct in context and in light of the trial as a whole. When viewed in this manner, a majority of this Court finds that the cumulative effect of the Commonwealth's actions did not deprive appellant of a fair trial.

## II. OPINION TESTIMONY BY THE DETECTIVE

■ Detective Fraction, who is with the Louisville Police Division Crimes Against Children Unit (hereinafter CACU), spoke with A.C. concerning the alleged sexual abuse and assisted in taking her to the emergency room for an examination. During Detective Fraction's testimony, the Commonwealth asked Fraction what she did after taking A.C. to the emergency room. Fraction responded:

I left the hospital. When I left the hospital, I went to seek a warrant for the arrest of Mr. Alexander because I felt, in my opinion, that the child was telling the truth.

Appellant's immediate objection was sustained, but a request for mistrial was overruled. The jury was admonished by the trial judge as follows:

Let me admonish you to disregard Detective Fraction's testimony concerning her opinion regarding whether the child was telling the truth. It is the function of the jury to determine the credibility to accord the child's testimony and it is not admissible evidence for this detective or anyone else to offer opinion testimony on whether or not the child was telling the truth. That is for the jury's determination alone.

■ It is normally presumed that a jury will follow an instruction to disregard inadmissible evidence that is inadvertently presented to it, unless (1) there is an overwhelming probability that the jury will be unable to follow the court's admonition; and (2) a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant. *Greer v. Miller*, 483 U.S. 756, 766, n. 8, 107 S.Ct. 3102, 3109, n. 8, 97 L.Ed.2d 618 (1987).

Appellant cites *Bussey v. Commonwealth*, Ky., 797 S.W.2d 483 (1990) for the proposition that Detective Fraction's testimony constituted reversible error. However, *Bussey* is distinguishable from the case presently before the Court. In *Bussey* the Commonwealth asked the officer whether he had come to a conclusion about whether the victim had been taken against his will. The officer responded that he had come to the conclusion that some type of misconduct had occurred. In the case at bar, Officer Fraction gave her opinion as an unsolicited response. Because Fraction had only testified on two previous occasions she was unaware that it was impermissible to give her opinion. We are not saying that ignorance of the law, or rules of evidence is an excuse, but under the facts of this case it appears that the opinion was not given in bad faith and the subsequent admonition made the error harmless.

■ Absent bad faith, an admonition given by the trial judge can cure a defect in testimony. See *Stanford v. Commonwealth*, Ky., 734 S.W.2d 781 (1987); *Dunn v. Commonwealth*, Ky.App., 689 S.W.2d 23 (1984). There is no "overwhelming probability" that the jury was unable to follow the trial judge's thorough and specific admonition. In the instant case, a majority of the Court finds that the trial judge's admonition to the jury did cure any error resulting from Detective Fraction's unsolicited response.

## III. CROSS–EXAMINATION OF APPELLANT

■ Appellant testified at trial that he was working during the time frame in which the alleged abuse occurred. On cross-examination of appellant the Commonwealth sought to rebut appellant's testimony through the use of inconsistent statements made by appellant. These statements were contained in documents appellant filed in order for his family to receive AFDC and food stamps. According to the documents of the social security insurance office, appellant had only

worked in January of 1990 and had not worked during the time frame of the alleged abuse. The trial court ruled that the Commonwealth was entitled to evidence which showed whether appellant was working on the days the events were to have occurred.

"That the credibility of any and every witness may be impeached 'by showing that he has made statements different from his present testimony' was the law in this state as long ago as 1851." *Jett v. Commonwealth*, Ky., 436 S.W.2d 788, 790 (1969). In *Jett* the Court held that when a witness has testified about some facts of a case, the jury is entitled to hear what else the witness has said about it. This is true so long as the evidence is relevant to the merits of the case and does not concern a collateral issue.

In the case before the Court, part of appellant's defense was that he was working during the time the alleged abuse occurred. Records showing that appellant had earlier stated that he was not working during this time go directly to the heart of appellant's defense.

The Commonwealth was required to lay a proper foundation before confronting appellant with the social security insurance office records. This foundation was accomplished by establishing that appellant's family was receiving food stamps and AFDC.

While the Commonwealth did stray to collateral matters in regard to appellant's welfare benefits, the trial judge sustained appellant's objection to such questions. The collateral issue questions were not unduly prejudicial and do not require reversal. A majority of this Court finds that the Commonwealth's line of questioning does not constitute reversible error.

## IV. TESTIMONY OF THE SOCIAL WORKER

■ Ms. Horrar, an investigative social worker employed with the Child Protective Services of the Cabinet for Human Resources (hereinafter CHR) and assigned to the CACU, testified as a witness for the Commonwealth. Over a continuing objection by appellant's counsel, the trial court permitted Horrar to testify as to the contents of an interview she had conducted with A.C. in the investigation of A.C.'s case. Horrar, referring to a report she had prepared based on the interview, testified:

> Basically [A.C.] stated that her stepfather, Earl Alexander, had sexually abused her during the time that her mother was in the hospital having a baby. She stated that he had been drinking and that he had called her upstairs to the bedroom and that when she got up there, he shut the door and pushed a mattress up against it. She said that he instructed her to take off her clothes, which she did. And that, in her words, he put his thing in my thing. She stated that this was somewhat painful, and denied she had bleeding from this.

> She said that Mr. Alexander told her that if she told anybody about this, he would kill himself. She also made the statement to me, quote, he made me suck it. Basically she said that she did suck his penis and that some water came out of it. She stated that the reason she obeyed him was because she was somewhat afraid of him.

> She said that he had never done anything of this nature to her prior to this incident; however, she did tell me that when she was approximately five years old, that she had been sexually abused by a grandfather and an uncle when the family lived in Cumberland County. The child also told me that she had told her mother about this incident and that when her mother returned from the hospital, she spanked her with a belt and told her that she was never to tell anybody else about this incident.

The trial judge ruled Horrar's testimony admissible pursuant to *Drumm v. Commonwealth*, Ky., 783 S.W.2d 380 (1990), under the business records exception to the hearsay rule.

We reverse on this issue because such testimony does not qualify under the business records exception to the hearsay rule, and even if it did qualify, would still be inadmissible.

Before a record is admissible under the business record exception to the hearsay rule

it must meet certain requirements.[1] These requirements are summarized in Lawson, *The Kentucky Evidence Law Handbook*, 2d ed., § 8.65(B) as follows:

Regular Business Entries: A record (memorandum, report, documents, etc.) of an act, event, condition, or diagnosis, is admissible to prove that act, event, condition or diagnosis if the record (i) constitutes an original entry, (ii) was made in the course of regularly conducted business activity, (iii) was made at or near the time of the phenomenon which it represents, and (iv) was made under circumstances which do not indicate a lack of trustworthiness.

In the case before us, we find the testimony of the social worker, as to A.C.'s statements, inadmissible because the report was not made under circumstances of trustworthiness. The lack of trustworthiness stems from the fact that the statements of A.C. in the record of the social worker were made by a party not under a business duty to report.

In *Buckler v. Commonwealth*, Ky., 541 S.W.2d 935 (1976) we stated that a business record exception permitted "the admission as competent evidence of record entries made in the regular course of *duty* in a business or profession by persons not having knowledge of the facts entered." *Buckler* at 937. (Emphasis added.) From this passage, it is clear that business records must be made pursuant to a business duty. The maker of the record and the person providing the information for the record must *both* be acting under a business duty. "If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." Commentary, Federal Rules of Evidence 803(6).

The often-cited case of *Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930) held a police report to be inadmissible as a business record because, while the officer was acting in the regular course and under a duty, the supplier of information was not. The situation presented before this Court is analogous to the inadmissibility of police reports under the business records exception. Police reports and the CHR report at issue are both investigatory reports. Horrar is an investigative social worker with CHR and assigned to the CACU of the Louisville Police Department. While Horrar had a duty to make a report of her interview with A.C., A.C. had no duty to impart any information to the social worker. Because A.C. was under no duty to report, the indicia of trustworthiness found in business records was not present.

The social worker's report in the present case differs from the report in *Cabinet for Human Resources v. E.S.*, Ky., 730 S.W.2d 929 (1987). In *E.S.* the social worker visited E.S.'s home on a regular basis. Her entries into the CHR records included her observations and conclusions as to what she saw on these visits. We held that:

those entries in the case record made by the social worker which constitute statements of factual observations are admissible under the business entries exception to the hearsay rule, and those statements which express opinions and conclusions are not.

*E.S.* at 932.

A CHR record which contains observations made by social workers is admissible as a business entry. However, in the case presently before the court, the CHR record did not contain such observations. It contained the out-of-court statements of the alleged victim, who testified at trial. Other than a couple of quoted phrases, the entire entry was paraphrased by Horrar as to what A.C. had told her. When a record contains the interpretations of what the recorder believes the supplier of the information to have said, the level of trustworthiness decreases dramatically. The entries in the CHR record presented in this case are inadmissible under the business records exception to the hearsay rule. The language in *Drumm* was intended to be, and is, fully consistent with this opinion.

---

1. These requirements are currently set forth in KRE 803(6). However, because the KRE was not adopted until May 12, 1992, this opinion shall construe the business records exception prior to codification.

Even if the CHR record qualified as a business entry, it would nevertheless be inadmissible. Had Horrar testified from memory, her testimony, being based entirely upon hearsay, would not have been admissible. Merely placing the same material in a written report does not automatically make it admissible. See *Sharp v. Commonwealth*, Ky., 849 S.W.2d 542 (1993). Neither is this evidence admissible under *Hellstrom v. Commonwealth*, Ky., 825 S.W.2d 612 (1992).

## V. OPINION TESTIMONY BY THE DOCTOR

On July 20, 1990, A.C. was taken to a hospital emergency room where Dr. Pope examined her. In obtaining a medical history from A.C., Dr. Pope asked A.C. the cause of any injury and symptoms thereof. A.C. told Dr. Pope that appellant had "put his in mine" and "had me suck on it." Dr. Pope took this to mean that appellant had placed his penis in A.C.'s vagina. Over a continuing defense objection, Dr. Pope testified that what appellant had done was consistent with a small tear Dr. Pope had observed in A.C.'s hymenal ring. Based in part on the medical history received, Dr. Pope diagnosed the injury as being the "result of such activity."

In *Brown v. Commonwealth*, Ky., 812 S.W.2d 502 (1991), the appellant was accused of first degree rape and incest of his daughter when she was age ten. The examining physician testified, based in part on case history, that a healed cervical tear on the alleged victim was "more likely in a ten year old as opposed to a fourteen year old." *Brown* at 504. Although the physician did not state specifically what caused the tear, we found that this statement inferred that "the injury is consistent with the offense charged: sexual abuse that occurred when the victim was ten years old." *Id.* This Court held that the doctor's testimony, based on the history, amounted to opinion testimony as to the ultimate issue and as such was reversible error.

The case before us today presents a much more prejudicial statement by the examining physician than was found in *Brown*. Testimony that the injury to A.C.'s hymenal ring was consistent with the charges against appellant requires no inference to conclude that "the injury is consistent with the offense charged." It is patently clear that this was what Dr. Pope meant.

In admitting this testimony, the trial court distinguished *Brown* by noting that in *Brown* the physician testified based on the alleged victim's case history; whereas, in appellant's case, the doctor's testimony was based on observations. However, *Brown* is indistinguishable from the present case. In both cases the physician obtained a medical history from the alleged victim and subsequently examined the alleged victim. In both cases the physician concluded that the physical injury was consistent with what the physician had been told in the medical history.

Dr. Pope clearly gave an opinion that appellant was guilty of rape. This opinion testimony was highly prejudicial and constitutes reversible error.

## VI. FAILURE TO STRIKE TWO VENIREPERSONS FOR CAUSE

During voir dire Ms. Leason, a venireperson, approached the bench and advised the court that she was not certain that she could sit impartially in appellant's trial. She was a social worker employed by CHR and working with the CACU.

The following is a transcription of Ms. Leason's voir dire at the bench with the trial judge, the Commonwealth and appellant's counsel.

**Leason:** I don't know any of these people personally, I'm just familiar with them through work. . . . I'm an investigative social worker with Child Protection Services.

**Judge:** So does part of your job involve investigating claims of sexual abuse of children or sexual crimes committed against children?

**Leason:** Yes.

**Judge:** Do you feel that that position would affect your ability to be fair and impartial as a juror in this case?

**Leason:** Yes.

**Commonwealth:** If you are selected as a juror in this case and you sit over there in the jury box and you listen to all of the evidence, are you going to be fair and going to listen to the evidence and are you going to make a decision based on what you hear here in court?

**Leason:** Yes.

**Commonwealth:** Can you be fair and listen to the evidence and make a decision of guilt or innocence based on what you hear here in court?

**Leason:** My job is different from the legal aspect. I'm not sure how much I'd be able to separate the social work from the legality.

**Commonwealth:** What I'm asking you is, if you sat on the jury in this case can you promise the court that you will listen to the evidence and you'll make a decision from what you hear from the witness stand whether or not the defendant is guilty or not guilty?

**Leason:** Yes.

**Commonwealth:** You'll do that?

**Leason:** Yes.

**Defense Counsel:** You have concerns?

**Leason:** If I'm being asked to make a decision in a legal sense, yes, I've never had to do that. I purely do it from the social work stand. Yes, I feel like I could do that.

**Defense Counsel:** Do you think there's things you've learned as a social worker, maybe some baggage you carry with you that could affect your judgment in this case.

**Leason:** No.

**Judge:** Do you feel, Ms. Leason, that as a result of being engaged in investigating complaints of sexual abuse of children that without knowing anything about this case that you would be more inclined, based on your past experience, to believe what the child said versus what the defendant said?

**Leason:** No.

.    .    .    .    .

**Defense Counsel:** Do you have a working relationship with CACU?

**Leason:** Yes.

▆ Toward the end of voir dire, another venireperson, Mr. Woods, approached the bench. The following conversation ensued.

**Woods:** Is this a mixed marriage? ... I have a distaste for that. Now, I'm mature enough to know that my dislike for something like that doesn't necessarily make the man guilty or innocent. I just want that to be known.

**Judge:** If evidence is introduced that Mr. Alexander's wife is white do you feel that that character ...

**Woods:** No, no. I just want it to be known that I have a dislike for it. I have been around a long time and I know what is fair and what isn't fair. And I believe what's right is right and what's wrong is wrong and that wouldn't enter into it.

.    .    .    .    .

**Judge:** Would the fact that Mr. Alexander is African–American and the child is a bi-racial child ...

**Woods:** No it wouldn't. I mean that doesn't, no, I don't firmly believe it would.

**Defense Counsel:** Debbie Alexander is a white woman and she's married to Earl [appellant]. She might testify in this case. Do you think in the back of your mind, while you're listening to the testimony, you might be thinking what kind of woman is this? Maybe judging her credibility a little bit differently than, say, if she was a black woman?

**Woods:** I have to be honest, I probably would. A degree of difference would probably be there, yes.

**Defense Counsel:** So you don't think that you could necessarily look at her testimony as the same as you would, say, a different witness?

**Woods:** No, no. Testimony, that would be a different matter. Now you were talking about whether I would feel what kind of woman that is. Maybe a degree, but her testimony would be something else.

*Defense Counsel:* Would you use that maybe as a factor to decide if she is a credible witness, whether maybe she should be believed?

*Woods:* No. A person's preference doesn't mean they're not honest about something.

*Defense Counsel:* So you wouldn't use that in any way?

*Woods:* I don't believe I would.

. . . . .

*Commonwealth:* If you're selected as a juror in this case, can you listen to the evidence, make a decision of guilt or innocence and be fair about it?

*Woods:* Yes.

*Commonwealth:* Certain?

*Woods:* Yes.

The trial court overruled defense counsel's motions to strike both of these venirepersons for cause. After the motion to strike Mr. Woods was overruled, defense counsel moved to be permitted an extra peremptory challenge. This motion was also overruled. All of appellant's peremptory challenges were used, two of which were used to strike Ms. Leason and Mr. Woods.

It has long been held that "[i]t is the probability of bias or prejudice that is determinative in ruling on a challenge for cause." *Pennington v. Commonwealth,* Ky., 316 S.W.2d 221, 224 (1958). "[A] party charged with a criminal offense is entitled to be tried by a fair and impartial jury composed of members who are disinterested and free from bias and prejudice, actual or implied or reasonably inferred." *Tayloe v. Commonwealth,* Ky., 335 S.W.2d 556, 558 (1960).

The question of whether a venireperson should be excused for cause is a matter within the discretion of the trial court. We hold that the lower court abused its discretion in regard to the above two venirepersons.

Ms. Leason stated that she was not personally familiar with the individuals involved in the trial. However, she did inform the court that she is currently an investigative social worker with CHR and that she has a

working relationship with CACU. In *Tayloe* the Court stated:

> where it is shown that an organization of which a venireman was a member is in some manner interested in or connected with the prosecution of the case, he should be regarded as incompetent to serve on the jury.

*Tayloe* at 558.

In the case before us, Ms. Leason was employed by CHR, the same organization with which Horrar, a key witness for the Commonwealth, was employed. CHR has assigned Ms. Leason to CACU, the same unit to which Horrar and Detective Fraction are assigned. Under these circumstances we find that the probability of bias on behalf of Ms. Leason was so great that it was an abuse of the trial court's discretion to fail to excuse her for cause.

As to the issue of whether Mr. Woods should have been excused for cause, the United States Supreme Court has stated that:

> [w]e recognize, of course, that a defendant has the right to an impartial jury that can view him without racial animus, which so long has distorted our system of criminal justice. We have, accordingly, held that there should be a mechanism for removing those on the venire whom the defendant has specific reason to believe would be incapable of confronting and suppressing their racism.

*Georgia v. McCollum,* —— U.S. ——, ——— ——, 112 S.Ct. 2348, 2358–2359, 120 L.Ed.2d 33 (1992).

Appellant is black, Mrs. Alexander is white and A.C. is bi-racial. Mr. Woods expressed to the court a distaste for "mixed marriages." Mr. Woods also stated that he would judge Mrs. Alexander's credibility a degree differently than he would judge the credibility of other witnesses.

Until testimony or evidence demonstrates otherwise, the credibility of one witness should stand the same as the credibility of all other witnesses. Like Ms. Leason, the probability of Mr. Woods' bias was so great, he should have been excused for cause.

The Commonwealth attempted to rehabilitate both venirepersons by asking both of them if they could decide the case based solely upon the evidence presented at trial. Both Ms. Leason and Mr. Woods responded affirmatively to this "magic question".

This Court has stated that:

[t]here is no "magic" in the "magic question." It is just another question where the answer *may* have some bearing on deciding whether a particular juror is disqualified by bias or prejudice, ... ... the "magic question" does not provide a device to "rehabilitate" a juror who should be considered disqualified by his personal knowledge or his past experience, or his attitude as expressed on voir dire.

*Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713, 718 (1991). (Emphasis in original.)

"[T]o obtain a reversal for infringement of his right to exercise peremptory challenges, appellant need only show that the trial court erred in overruling any one of his challenges for cause." *Marsch v. Commonwealth*, Ky., 743 S.W.2d 830, 834 (1988). In the case before us, Ms. Leason's attitude and past experiences and Mr. Woods' attitude created a reasonable inference of bias or prejudice. The affirmative response to the "magic question" did not eradicate the bias and prejudice. "Their statements, given in response to leading questions, that they would disregard all previous information, opinions and relationships should not have been taken at face value." *Id.* Because both venirepersons should have been stricken for cause, the trial court committed reversible error.

For the foregoing reasons we affirm as to issues one through three; we reverse and remand to the trial court issues four through six for further consideration in conformity with this Opinion.

LAMBERT, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur as to issues one through three.

STEPHENS, C.J., LEIBSON, COMBS, LAMBERT and REYNOLDS, JJ., concur as to issues four through six.

STEPHENS, C.J., dissents and files opinion as to issues one through three. LEIBSON and COMBS, JJ., join in the dissent.

SPAIN, J., dissents and files opinion as to issues four through six. WINTERSHEIMER, J., joins in his dissent.

SPAIN, Justice, concurring in part and dissenting in part.

I concur in so much of the Majority Opinion as affirms the trial court's rulings on the first three issues raised by the appellant, but respectfully dissent from the reversal on the remaining three issues.

I believe that the trial court correctly allowed the admission of testimony by Ms. Nancy Horrar, the investigative social worker, regarding the contents of a report made by her of her previous interview with the victim. It should be noted that this was allowed as rehabilitation after the victim had fully testified and after the defense had cross-examined her and inferred that her trial testimony had been influenced by the prosecutor; i.e., that it was a recent fabrication because of the prosecutor's influence. Under these circumstances, the fact that the report contained information from the victim consistent with her trial testimony and recorded by the social worker as a business entry before there was any opportunity for prosecutorial influence, rendered the rebuttal evidence clearly admissible. *See* R. Lawson, *Kentucky Evidence Law Handbook* § 4.10(c)(2) quoting from *Eubank v. Commonwealth*, 210 Ky. 150, 158, 275 S.W. 630, 633 (1925) as follows:

As a general rule, a witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony. Where, however, a witness has been assailed on the ground that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the matter when the motive did not exist, before the effect of such an account could be foreseen, or when motive or interest would have induced a different statement, is admissible.

*Also see Reed v. Commonwealth,* Ky., 738 S.W.2d 818 (1987).

It is also my opinion that the trial court correctly admitted testimony by Dr. Melissa Pope regarding her physical examination of the victim at the emergency room and the history elicited from the little girl. The doctor testified that she observed a tear in the victim's hymenal ring of recent origin and that such an injury was consistent with the medical history related by the child of vaginal intercourse with an adult. A physician certainly possesses sufficient expertise by reason of training and experience to state an opinion regarding this medical matter. We have so held in *Hellstrom v. Commonwealth,* Ky., 825 S.W.2d 612, 617 (1992), and in *Pevlor v. Commonwealth,* Ky., 638 S.W.2d 272 (1982). The trial court further properly distinguished the instant case from *Brown v. Commonwealth,* Ky., 812 S.W.2d 502 (1991), now relied on by the Majority, wherein the physician based her testimony as to the age of a cervical tear solely on the case history.

With further regard to the admission by the trial court of the testimony of the social worker and the physician, it would seem that even if one found such evidence to have been improperly admitted, it is nevertheless clear that any error was harmless as being merely cumulative of the victim's trial testimony. *See Hellstrom v. Commonwealth, supra; Flannery v. Commonwealth,* Ky., 443 S.W.2d 638 (1969); and *Ringstaff v. Commonwealth,* Ky., 275 S.W.2d 946 (1955).

Finally, we turn to the issue of whether the trial court erred in refusing to excuse for cause potential jurors Leason and Woods. The Majority Opinion quotes verbatim the colloquy between the court, counsel, and the venirepersons. It reflects that Ms. Leason did not know personally any of the individuals involved in this case, although she was employed as an investigative social worker with child protection services in Louisville. Although at first she stated that she believed that her work would affect her decision, she stated after questioning that she could be fair and would listen to the evidence and make a decision based upon what she heard from the witness stand in court. She further answered defense counsel that she didn't think she "carried any baggage" from being a social worker that would affect her judgment in this case, nor would she be more inclined based on her past experience to believe what a child said versus what the defendant said.

The other potential juror whose qualifications are in issue, Mr. Woods, simply expressed his distaste for mixed marriages and inquired if that were the situation with the appellant. He nonetheless stated that such a fact would not cause him to view the appellant's wife's testimony differently than that of another witness and that he was certain he could make a fair decision as to guilt or innocence.

We recently stated in *Stoker v. Commonwealth,* Ky., 828 S.W.2d 619, 625, 625 (1992):

> Another judge may have excused this juror for cause based on her answers, but the question is whether in failing to excuse this juror the trial court abused its discretion. The juror's answers, when reviewed in their entirety, suggest the juror was being conscientious, not showing bias. Ultimately, the juror assured those present that she could listen to the evidence and render a fair and impartial verdict. We have recently recognized that the decision regarding juror "impartiality is not a technical conception ... limited to the juror's response to a 'magic question.'" *Montgomery, Sherman and Hudson v. Commonwealth,* Ky., 819 S.W.2d 713 (1991). But here when reviewed "in the totality of circumstances," the juror's responses were not such as to require disqualification. They do not compel the conclusion that the trial court abused its discretion.

Similarly, in the present case, the answers given by Jurors Leason and Woods show that they were being conscientious and not showing bias. When reviewed in the "totality of the circumstances," the jurors' responses did not require disqualification. The trial court did not abuse its discretion.

WINTERSHEIMER, J., joins in this opinion.

STEPHENS, Chief Justice, dissenting.

Respectfully, I dissent from the majority's affirmance of three issues presented to this Court.

## I. GENERAL PROSECUTORIAL MISCONDUCT

Throughout the entire trial, the Commonwealth's actions were replete with misconduct. In voir dire the Commonwealth informed the jury that the Commonwealth represented the community and that defense counsel did not. In opening statement the Commonwealth verbally attacked A.C.'s mother and told the jurors that the examining physician would testify that her diagnosis was sexual abuse. Defense counsel's objections to the Commonwealth's argumentative statements were sustained. In the majority opinion we have discussed two reversible errors that occurred in the Commonwealth's presentation of the case. During its case in chief the Commonwealth continued its verbal assault on A.C.'s mother. As will be discussed below, the vast majority of the Commonwealth's cross-examination of appellant was improper. In closing, the jury was admonished that the Commonwealth had improperly commented on the jury instructions. Another admonition was given regarding the Commonwealth's comment about defense counsel's actions. In the penalty phase the Commonwealth improperly read to the jury from an unpublished Court of Appeals opinion.

The Court in *Faulkner v. Commonwealth,* Ky., 423 S.W.2d 245, 248 (1968), stated that:

[u]pon reading the record of the trial of this case the conclusion is inescapable that the Commonwealth's attorney pursued a course of action deliberately calculated to cause the jury's decision to be influenced by improper factors. In this he overstepped the bounds of propriety and fairness which should characterize the conduct of a prosecuting attorney.

As previously noted, prosecutorial misconduct extended throughout the trial. We have stated that in some instances errors taken separately are insufficient to require reversal. However, errors taken collectively mandate reversal. *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988). Here the cumulation of errors and prosecutorial misconduct require reversal. The misconduct was too frequent and too prejudicial to ignore.

## II. OPINION TESTIMONY BY THE DETECTIVE

Detective Fraction, with the CACU of the Louisville Police Department, testified that after speaking with A.C. and taking her to the hospital she "went to seek a warrant for the arrest of Mr. Alexander because I felt, in my opinion that the child was telling the truth." The trial court sustained appellant's objection, but overruled a request for a mistrial.

The opinion given by the detective constitutes reversible error. In *Bussey v. Commonwealth,* Ky., 797 S.W.2d 483 (1990), a police officer testified that he had concluded that some type of misconduct had occurred. We found that this amounted to a declaration that the officer believed the story told by the victim. In *Bussey* we concluded that such testimony was prejudicial error and reversed as to this issue.

In the case before us the jury was told in clear and concise language that the detective believed that A.C. was telling the truth. This testimony was far more prejudicial than that in *Bussey*. Such opinion testimony is clearly inadmissible and requires a reversal when it has been expressed to the jury.

## III. IMPROPER CROSS-EXAMINATION OF APPELLANT

Of the Commonwealth's sixteen minute cross-examination of appellant, thirteen minutes were devoted to questioning appellant about whether he and his family were receiving welfare benefits and about whether appellant had committed welfare fraud.

According to the Commonwealth, the purpose of this line of questioning was to rebut appellant's testimony that he was working during the time frame in which the abuse allegedly occurred. Working during the daytime would not have provided an alibi in any event because the child said that the assault

occurred at night and the appellant testified that he was at the apartment in the evening.

On three separate instances the trial judge limited the Commonwealth's inquiry to the specific days surrounding the alleged offense. After each admonition the Commonwealth would again delve into the collateral matters of whether appellant had committed welfare fraud and whether appellant was still receiving welfare benefits.

The Commonwealth's cross-examination of appellant was totally irrelevant and highly prejudicial. Contained in the cross-examination was improper impeachment on a collateral matter and improper discussion of a collateral criminal matter. The Commonwealth attempted to evoke dislike and bias against appellant based on such collateral matter. It is reversible error for the Commonwealth to attempt to sway the jury to determine the issue of guilt or innocence upon a basis other than evidence pertaining to the charge. *Pankey v. Commonwealth*, Ky., 485 S.W.2d 513 (1972).

Because the Commonwealth injected irrelevant collateral matter which was unduly prejudicial, I would reverse as to this issue as well.

COMBS and LEIBSON, JJ., join in this dissent.