COMMONWEALTH of Kentucky, Appellant,

v.

Tim SNODGRASS, Appellee.

No. 91–SC–360–DG.

Supreme Court of Kentucky.

May 14, 1992.

As Amended June 4, 1992.

Chris Gorman, Atty. Gen., Ann Louise Cheuvront, Rickie L. Pearson, Asst. Attys. Gen., Crim. Appellate Div., Frankfort, for appellant.

Ruth W. Francis, Appellate Public Advocate, Winchester, for appellee.

SPAIN, Justice.

Tim Snodgrass, a black man, was convicted by a jury of the Garrard Circuit Court on two counts of criminal possession of a forged instrument in the second degree. A concurrent sentence of three years on each count was imposed by the trial court. The Court of Appeals reversed the judgment of conviction in a 2–1 decision. We disagree with the decision of the Court of Appeals and reverse.

Snodgrass' trial began on April 3, 1990, with a twenty-five member venire being randomly chosen. Randolph Clark was the only member of the venire selected who was black. During voir dire, the trial court asked if anyone on the venire knew the prosecutor, the prosecuting witness, defense counsel, or Snodgrass. No one responded. Prior to exercising his peremptory challenges, the prosecutor learned from a source that Mr. Clark did know Snodgrass. The prosecutor then exercised a peremptory challenge pursuant to RCr 9.40 to strike Mr. Clark from the venire. A fifteen-minute recess was called by the trial court after the jury was impaneled. Thereafter, in the trial judge's chambers, defense counsel requested a mistrial on the basis that the striking of the only black person from the venire violated the dictates of *Batson v. Kentucky,* 476 U.S. 79, 106

S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court inquired of the prosecutor why he had peremptorily struck Clark. The prosecutor stated:

Yes, Judge, I think the case [Batson] says that I need to be able to articulate a reason why I struck him, and I can do that. Mr. Clark, I believe, had ample opportunity to express the fact that he was acquainted with this defendant. The information that I had is that they live close by one another. Their families have known each other for years. So I struck him for the reason that I felt like he would be a juror who would be most or would have some degree of sensitivity to Mr. Snodgrass and would have some concerns about returning to his neighborhood and facing the people if he were to sit on a jury that returned a verdict of guilty on Mr. Snodgrass.

The trial court then heard defense counsel's argument and again asked the prosecutor why he struck Clark. The prosecutor reiterated the above reasons for striking Clark, and added:

\*   \*   \*   \*   \*   \*

If there was anybody else on the jury panel who knew Mr. Snodgrass' family or lived close by them or had known Mr. Snodgrass all his life, I would exercise the same strike.

The trial court ruled that the prosecutor had articulated a race-neutral explanation and overruled defense counsel's motion for a mistrial.

Our focus in this case is on whether the prosecutor violated the Equal Protection Clause as interpreted by Batson, when the prosecutor peremptorily struck the only black juror seated in the venire. The Court of Appeals found fault in the Commonwealth's failure to inquire further of Clark on voir dire as to whether he knew the Snodgrasses and whether he could consider the case objectively. The Court of Appeals further criticized the prosecutor by stating that his decision was based upon "intuition or information *aliunde.*" The opinion added on page 3:

A questioning of Clark may have revealed a legitimate reason for his exclu-

sion, but there was no such interrogation. Under the circumstances, we think it was incumbent upon the Commonwealth to show that Clark was not excluded because of his race. The remarks of the Commonwealth fail to fulfill this burden.

In *Batson,* the U.S. Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. *Id.* at 96–98, 106 S.Ct. at 1722–24. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 96–97, 106 S.Ct. at 1722–23. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.* Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1724. "The analysis set forth in *Batson* permits prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process." *Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

■ Prior to deciding the substance of the case, we must first note two procedural discrepancies. We first question whether the *Batson* issue was properly preserved for appellate review. The record clearly indicates that defense counsel did not raise his *Batson* challenge until after the jury was sworn and given a fifteen-minute recess.

In *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393, 398 (1988), this Court stressed that an effective *Batson* challenge must be timely:

... If appellant had made a timely challenge to the exercise of peremptories by the Commonwealth, the trial court could have held a hearing to determine if a prima facie case of discrimination existed, and if so, the steps set forth in *Batson* ... could have been complied with without delay. If it were determined

that the challenge of any juror was the result of discrimination, that challenge could have been disallowed and that juror would have remained on the panel. As it happened, *no objection was made until after appellant had stated his satisfaction with the jury, the remaining jurors were discharged and had left the courtroom, and the jury was sworn to try the case. The only relief sought was a mistrial and a continuance of the case. We do not think the Commonwealth should be subjected to such delay and additional expenses as would be caused by a new trial when the appellant could have avoided the situation entirely by making a timely motion.* [Emphasis added.]

However, we find that this issue is moot since the issue was not raised before the Court of Appeals and before this Court, nor was it addressed by the Court of Appeals in its decision.

■ We next question whether defense counsel ever satisfied the first prong of the *Batson* test by setting forth a prima facie showing of purposeful discrimination. His sole reason for objecting to the strike was because Mr. Clark was the only black selected from the jury pool. In *Commonwealth v. Hardy*, Ky., 775 S.W.2d 919, 920 (1989), we stated that *"Batson requires more than a simple numerical calculation. Numbers alone cannot form the only basis for a prima facie showing."* But since the prosecutor offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate issue of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing also becomes moot. *Hernandez, supra,* 111 S.Ct. at 1866.

Our review next turns to the substantive issue of whether the trial court's finding that the prosecutor articulated a race-neutral explanation for striking Mr. Clark from the venire was clearly erroneous.

■ The sole determination by the trial court when it holds a *Batson* hearing is whether the prosecutor exercised a peremptory challenge on a venireman because of his race. *Batson* gives great deference to the trial court in determining whether the prosecutor's strike is racially motivated. A trial court should give appropriate weight to the disparate impact of the prosecutor's criterion in its decision, but this factor is not conclusive in the preliminary race-neutral inquiry. *Hernandez, supra* at 1863. The trial court may accept at face value the explanation given by the prosecutor depending upon the demeanor and credibility of the prosecutor. *Stanford v. Commonwealth*, Ky., 793 S.W.2d 112 (1990). No additional inquiry or evidentiary hearing is required under *Batson.*

> There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercised the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez, supra,* 111 S.Ct. at 1869.

■ We find no fault with the prosecutor for exercising a peremptory challenge against a juror where the decision to strike is based upon information which the prosecutor has received from a source other than information received from voir dire. *Batson* does not require the neutral explanation for peremptorily striking a potential juror to be derived from voir dire. Neither does the explanation have to rise to a level sufficient to satisfy a strike for cause. *Batson, supra.* A prosecutor may utilize his own personal knowledge concerning a juror and information supplied from outside sources. Whether the information is true or false is not the test. The test is whether the prosecutor has a good-faith belief in the information and whether he can articulate the reason to the trial court in a race-neutral manner which is not inviolate of the defendant's constitutional rights. The trial court, as the final arbiter, then decides whether the prosecutor has acted with a forbidden intent. Here the juror, either intentionally or otherwise, failed to respond to a question posed by the trial court to the jury panel which the pros-

ecutor believed merited a response; that question being whether any of the veniremen knew the defendant. The prosecutor's knowledge that Mr. Clark did know Snodgrass was then articulated in a race-neutral explanation to the trial court. The trial court properly found that the explanation was race-neutral and rejected Snodgrass' assertion that the reasons were pretextual.

■ We find no due process or equal protection violation by the prosecutor in striking a juror who lives nearby or in the same neighborhood as the defendant. The locality of a juror's residence in relation to the defendant may raise an inference of bias and cause a juror to be "sensitive" to one party over another. This is pure human nature regardless of the race of the juror. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

While we agree with the Court of Appeals that further questioning of Mr. Clark by the Commonwealth or the trial court might well have reaffirmed the suspicions of the prosecutor, we do not believe that either our Federal or State Constitutions required such inquiry, especially where the strike arises from a peremptory challenge.

We find that the Court of Appeals has abused its discretion by substituting its findings for that of the trial court without a finding of clear error, and by imposing a higher standard on the prosecutor than required by this Court and the United States Supreme Court. In *Hernandez, supra,* 111 S.Ct. at 1870, the U.S. Supreme Court has ruled that the trial court's finding on the question of discriminatory intent is a question of historical fact and is not to be set aside unless shown to be clearly erroneous.

The finding of the trial court that the explanation of the prosecutor was race-neutral is not clearly erroneous, and accordingly no abuse of discretion occurred. *Hernandez, supra; Stanford, supra.*

The decision of the Court of Appeals is reversed and the judgment of conviction of the Garrard Circuit Court is reinstated.

All concur except COMBS, J., who dissents by separate opinion.

COMBS, Justice, dissenting.

I respectfully dissent and would affirm the Court of Appeals.

The venireman's silence when questioned by the court implied an assertion that he did not know the defendant. If the Commonwealth's Attorney had contradictory information from a "source," he had every opportunity on voir dire to confront Clark directly with that information, and to insist on a sworn response. Instead, the prosecutor relied exclusively on the *un*sworn statement of an informant, whom moreover he failed to name.

According to the majority: "Whether the information is true or false is not the test. The test is whether the prosecutor had a good-faith belief in the information and whether he can articulate the reason to the trial court in a race-neutral manner...." Ante at 179. I am not convinced that the test is so categorical. Surely the degree of credibility of the information affects the question of whether the prosecutor's acceptance of it is, in the *Batson* context, in good-faith. The posture of the matter when the trial court ruled was this: 1) the venireman had represented to the court, under oath, that he did not know the defendant; 2) the prosecutor had failed to examine the venireman concerning his silence; 3) the prosecutor had failed to identify his source of information or to give any indication that the source was reliable.

In my view, the trial court abused its discretion in ruling that the Commonwealth's Attorney's explanation was race-neutral, eschewing further inquiry which was clearly in order. Why did the prosecutor not question the prospective juror on voir dire? Who was the prosecutor's "source," and why did the prosecutor believe his/her unverified statements, and by implication believe that the (black) venireman had concealed the truth while under oath? (It merely begs the question to re-

ply that Clark had motive to lie *if* he knew the defendant.)

While it is true that "[t]here will seldom be much evidence bearing on [the] issue" (ante at 179), much more evidence *was* readily available in this case, and it ought to have been explored. Under the circumstances, the trial court's precipitous ruling was clearly erroneous.