# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

## 2019-SC-000274-MR

DATE 7-30-20

DANIEL GENE PERDUE      APPELLANT

V.      ON APPEAL FROM CALDWELL CIRCUIT COURT
HONORABLE CLARENCE A. WOODALL III, JUDGE
NO. 18-CR-00057

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Caldwell Circuit Court jury convicted Daniel Gene Perdue of two counts of third-degree burglary, one count of theft by unlawful taking over $500 or more, one count of second-degree fleeing and evading police, and of being a first-degree persistent felony offender. Perdue was sentenced in accordance with the jury's recommendation to twenty years' imprisonment and now appeals to this Court as a matter of right. Ky. Const. §110(2)(b).

Perdue asserts the trial court erred in overruling his challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986) to the Commonwealth's use of peremptory strikes to remove two African American jurors.

For the following reasons, we affirm Perdue's conviction and sentence.

## I. BACKGROUND

Perdue's sole claim of error is the trial court's denial of his *Batson* challenge. Perdue is a white male and the two jurors in question were African

American. Perdue alleges no claims of error outside of voir dire. Therefore, our review will focus entirely on jury selection.

The video record in this case makes it difficult to view the jury pool in this case—and deliberately so. The cameras in our courtrooms are intentionally set to avoid showing the jury pool or jury box. Therefore, the panel of potential jurors called to try the case is never shown on the video. Without a view of the jury pool, it is not possible to observe juror facial or bodily reactions to counsel's questions. It is, with few exceptions, not possible to discern which jurors raised their hands in response to a question. Counsel's attention on a juror is not possible to discern. Only those jurors who participated in individual bench discussions and questioning are shown, and those jurors did not include numbers 308 and 113—the two jurors in question. Juror 308 is female and Juror 113 is male.

During group voir dire, the Commonwealth asked if any juror had a family member who had been represented by the defense counsel for Perdue. Juror 308 raised her hand and was acknowledged by her name and confirmed that defense counsel's prior representation of her son would have no effect on her as a juror in this case. As the jurors are not visible on the video record during group questioning, these few questions and answers comprised the responses attributable to Juror 308. Likewise, Juror 113 was not shown responding to any group voir dire questions.

After strike sheets were turned in, Perdue's counsel made a *Batson* challenge to the Commonwealth striking jurors 308 and 113. In making his

motion, Perdue's counsel said he assumed the Commonwealth would make the same argument concerning Juror 308 that it made at a trial the previous day. The argument centered on Juror 308's son, who had been prosecuted several times by the local Commonwealth's Attorney's office. In fact, Juror 308's son had been tried by the same Assistant Commonwealth's Attorney who was representing the Commonwealth in Perdue's trial. The juror's son had been represented in several cases by the same defense counsel who represented Perdue at trial.

The prosecutor affirmed that was her argument for striking Juror 308 and added that the lead officer at Perdue's trial had also investigated Juror 308's son in other cases. The prosecutor noted that at the previous trial she had prepared and presented a chart of indictments for Juror 308's son and marked those cases where she prosecuted him and defense counsel defended him. The prosecutor's concern was the juror's familiarity with the lawyers and her son's prior involvement with Perdue's lead investigating officer. The Commonwealth's Attorney was wary of how Juror 308 would be affected by her son's history—despite her saying that his prior representation by Perdue's counsel would have no effect on her.

We note the chart referenced by the Commonwealth's Attorney listing those prior indictments was not included in the record in this case. The indictments she mentioned were not listed by case number and Juror 308 was not asked questions about those cases. Juror 308 was not asked how she felt about her son's prosecutions, nor was she asked about the defense he received

3

in those cases. As far as this record reveals, during voir dire, Juror 308 responded to one area of inquiry by the Commonwealth by raising her hand and saying her son's prior history with defense counsel would not affect her.

Perdue's counsel also moved to set aside the Commonwealth's strike of Juror 113, who did not respond to any questions during voir dire. The Commonwealth claimed that the juror lived with a relative, possibly an uncle, who was a registered sex offender and had other court problems including a prior felony probation revocation. Juror 113 also had a first cousin who had been prosecuted by the Commonwealth's Attorney's office on several occasions. The Commonwealth was concerned about the possible effects of this juror's family members' criminal histories. Juror 113 was never asked about his uncle or his first cousin and how he felt about their legal problems and involvement with the court system.

The Commonwealth exercised peremptory strikes against two jurors based on criminal histories of family members, previous prosecutions by the Commonwealth's Attorney and her office, prior defense counsel representation of Juror 308's son, and lead officer's prior involvement with Juror 308's son. No concerns were expressed by the Commonwealth's Attorney about anything the two jurors said in response to questions during voir dire or any out-of-court comments attributed to them. The Commonwealth's concerns were based entirely on information obtained from out-of-court sources—primarily prosecution records.

4

The two jurors in question represent two-thirds—or possibly all— of the African American jurors in the jury pool. The actual percentage struck is not clear because of uncertainty about one juror's possible race. That juror was described by the Commonwealth as possibly being "mixed" race based on her complexion, and the Commonwealth noted she did not strike that juror. That juror is also never seen on the video record.

A copy of the voir dire from the previous day's trial is missing from the record on appeal. Under typical circumstances, unless a codefendant is involved, what happened during voir dire at a separate trial is not relevant to the issues at hand in a case currently being reviewed. However, in this circumstance, information that came to light during the prior day's voir dire is discussed by the attorneys and the trial court during Perdue's voir dire. This has a heightened degree of relevancy because the trial court judge, prosecutor, defense counsel, and much of the jury pool were the same for both trials.

The problem created by the missing voir dire from the previous day is that the parties and trial court in Perdue's case talk about and rely on the prior day's voir dire, which is unknown and unavailable to this Court. One example was the trial court noting its ruling on a *Batson* challenge in the prior day's trial. The trial court said that in order to be consistent with the decision in the prior trial, it found the Commonwealth's proffered reasons were race neutral. However, without the prior voir dire being included with this record, we are unable to evaluate that decision. The underlying factual basis for the prior

5

decision including the Commonwealth's chart of prior indictments, is largely unavailable for review in Perdue's case.

Following arguments of counsel, the trial court found the Commonwealth's stated reasons for the peremptory strikes to be sufficiently race neutral and denied Perdue's *Batson* challenge.

## II. ANALYSIS

A *Batson* challenge requires a trial court to make a decision during trial based on the evidence before it at that point in the trial. This allows the challenge to be heard, resolved, and the trial to proceed. "The trial court is afforded great discretion in making its determination under *Batson.*" *Gamble v. Commonwealth*, 68 S.W.3d 367, 372 (Ky. 2002). A trial court's decision will not be set aside unless it is clearly erroneous. *Id.* at 372. *See also Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859, 114 L.Ed.2d 395 (1991); *Commonwealth v. Snodgrass*, 831 S.W.2d 176 (1992). Further, "[f]indings of fact are not clearly erroneous if supported by substantial evidence. Substantial evidence is that evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable people." *Ky. State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972).

In reviewing Perdue's claims, we refer to long-standing principles that outline the required three-step process pursuant to *Batson*:

> As is now familiar, *Batson* provides a three-step process whereby trial courts are to adjudicate claims that peremptory juror challenges were based on race:

6

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race [; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Brown v. Commonwealth*, 313 S.W.3d 577, 602 (Ky. 2010) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008)) (citations and internal quotation marks omitted).

A review of the record reveals that the trial court did not require Perdue to provide any additional information for the required prima facie showing. We proceed presuming that the trial court found sufficient information to then proceed to the second prong of the required process and ask the Commonwealth to respond to the challenge. We need not address whether Perdue's claims were sufficient for the required prima facie showing as the trial court proceeded without objection by the Commonwealth.

The Commonwealth's response is the focus of Perdue's arguments. In his brief, Perdue asserts that the Commonwealth's response was unclear and not reasonably specific and references *Johnson v. Commonwealth*, 450 S.W.3d 696 (Ky. 2014), *abrogated on other grounds by Roe v. Commonwealth*, 493 S.W.3d 814 (Ky. 2015). In *Johnson*, we articulated that the reasoning behind the requirement is "because a clear, reasonably specific and legitimate *reason* is necessary for the trial court to fulfill its duty to assess the plausibility of the proffered reason for striking the potential juror in light of all the evidence." *Id.*

7

at 704. In this case, upon review we are led to conclude, that the Commonwealth's offered reasons were clear and specific.

As noted above, the Commonwealth's offered race-neutral reasons were apparently accepted at a trial the previous day. For Juror 308, the underlying basis of the strike was her son's history with the Commonwealth's Attorney and her office as well as the history of the son's prior representation by defense counsel. However, in addition to the information provided at the previous trial, the prosecutor added that the lead officer in Perdue's case had investigated the juror's son in other criminal cases. For Juror 113, the race-neutral reasons included the uncle the juror lived with had been prosecuted for issues including a probation revocation. Additionally, that juror's uncle was a registered sex offender and his first cousin had also been previously prosecuted.

Following counsel's arguments, the trial court ruled the reasons given by the prosecution were sufficiently race neutral. After careful review, we agree.

The first portion of our review deals with the factual circumstances of Perdue's trial. As noted above, the trial judge, the Commonwealth's Attorney, defense counsel, and many of the jurors in Perdue's trial were involved in a trial on the previous day. This circumstance is not uncommon in smaller rural courts throughout the Commonwealth.

Court of Justice system records indicate Caldwell County is part of a four-county circuit. As in many smaller rural counties, the Commonwealth's Attorney's office covers all four counties and the public defender's office

8

frequently assigns one attorney to handle the dockets in a small county. It is not unusual for the trial judge, the prosecutor, and appointed counsel to be the same for many cases. In many small counties, a jury panel sits for a six-month period during which cases are tried before the same jury pool. The circumstances in Perdue's case were not unusual to similarly-situated courts.

With that in mind, we remind counsel practicing in smaller rural courts that it is incumbent on them to make sure the record includes those relevant facts and information connected to issues in the current case. "Appellant has a responsibility to present a 'complete record' before the Court on appeal." *Hatfield v. Commonwealth*, 250 S.W.3d 590, 600 (Ky. 2008). As an example, we note that a copy of the Commonwealth Attorney's chart listing indictments for Juror 308's son apparently shown in the prior trial would have been helpful, as would including the prior day's trial voir dire with its arguments by counsel. While we note those efforts would be the best practice moving forward, there is still sufficient information in this record to support the trial court's findings.

In this case, the Commonwealth struck either two of the three African American jurors or possibly all the available African American jurors (depending on the race of a third juror). Either way, the number of jurors struck is not dispositive. "*Batson* requires more than a simple numerical calculation." *Commonwealth v. Hardy*, 775 S.W.2d 919, 920 (Ky. 1989). In evaluating the prosecution's claims, the United States Supreme Court said: "In the typical peremptory challenge inquiry, the decisive question will be whether

9

counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez*, 111 S. Ct. at 1869. In addition to the demeanor of the attorney offering the reasons, we said:

> We find no fault with the prosecutor for exercising a peremptory challenge against a juror where the decision to strike is based upon information which the prosecutor has received from a source other than information received from voir dire. *Batson* does not require the neutral explanation for peremptorily striking a potential juror to be derived from voir dire. Neither does the explanation have to rise to a level sufficient to satisfy a strike for cause.

*Snodgrass*, 831 S.W.2d at 179.

> We further made clear in *Snodgrass* that:

> A prosecutor may utilize his own personal knowledge concerning a juror and information supplied from outside sources. Whether the information is true or false is not the test. The test is whether the prosecutor has a good-faith belief in the information and whether he can articulate the reason to the trial court in a race-neutral manner which is not inviolate of the defendant's constitutional rights.

*Id.* at 180.

In this case, the information from outside sources relied on by the prosecutor was permitted under *Snodgrass*. There can be little doubt the Commonwealth's Attorney had a good-faith belief in the information provided to the court as much of it was derived from her own office's prosecution records. Further, the information provided by the Commonwealth was not disputed by Perdue, and the trial court was in the best position to evaluate the

10

demeanor of the attorney offering the information. The trial court's decision to accept the Commonwealth's race-neutral reasons was supported by the evidence.

The Commonwealth was very specific in its stated response. The Commonwealth pointed to family relations with actual criminal cases prosecuted by the prosecutor's office and by the Commonwealth's Attorney trying Perdue. Further details included representation by defense counsel and officer involvement with Juror 308's son in other cases. Unlike the general claim of age with no further specifics offered by the prosecutor in *Johnson*, 450 S.W.3d at 703-704, the claims in this case are very detailed and undisputed by Perdue.

It is possible that the family relationships in this case that concerned the Commonwealth might not have risen to the level justifying a strike for cause. Without further questioning of the jurors it is impossible to know, but such questioning is not required. We said in *Snodgrass*:

> While we agree with the Court of Appeals that further questioning of Mr. Clark by the Commonwealth or the trial court might well have reaffirmed the suspicions of the prosecutor, we do not believe that either our Federal or State Constitutions required such inquiry, especially where the strike arises from a peremptory challenge.

831 S.W.2d at 180.

Family relationships and prior involvement with the court system are a reasonable topic of concern for attorneys. Even with an expression of affirmation that the family relationship and a prior history with the court

11

system by that family member will not affect a juror, there exists understandable cause for concern.

In prior cases where jurors said that they could disregard close relationships, we said: "Their statements, given in response to leading questions, that they would disregard all previous information, opinions and relationships should not have been taken at face value." *Marsch v. Commonwealth*, 743 S.W.2d 830, 834 (Ky. 1987). Further: "It makes no difference that the jurors claimed they could give the defendants a fair trial." *Montgomery v. Commonwealth*, 819 S.W.2d 713, 718 (Ky. 1991). Jurors are asked to come to court and then asked to set aside close family relationships and the history that goes with those relationships. In a somewhat different context, we said: "[I]rrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses." *Ward v. Commonwealth*, 695 S.W.2d 404, 407 (Ky. 1985) (internal citations omitted). A reasonable nondiscriminatory exercise of peremptory challenges can resolve these concerns.

"While the Constitution does not confer a right to peremptory challenges, those challenges traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury." *Batson*, 106 S. Ct. at 1720 (internal citations omitted). While limitations have been placed on unbridled use of peremptories to prevent unlawful discrimination, this court has sought

12

to preserve the ability of trial lawyers to utilize this tool in jury selection on behalf of their clients.

The goal of selecting an impartial jury has been a consistent one in our jurisprudence. We reference a quote from Chief Justice Hughes of the United States Supreme Court: "Impartiality is not a technical conception. It is a state of mind." *U. S. v. Wood*, 299 U.S. 123, 145-46 (1936). "A trial court's decision whether a juror possessed this mental attitude of appropriate indifference must be reviewed in the totality of circumstances." *Gabbard v. Commonwealth*, 297 S.W.3d 844, 853 (Ky. 2009) (internal quotation marks omitted). The goal of an appropriate state of mind can be served with proper nondiscriminatory use of peremptory challenges.

Under the totality of circumstances in this case, the trial court's decision to find the Commonwealth's stated race-neutral reasons for striking Jurors 308 and 113 sufficient was supported by the evidence. The trial court's decision to overrule Perdue's *Batson* challenge was not clearly erroneous.

## III. CONCLUSION

After careful consideration of the issue presented, we affirm Perdue's conviction and corresponding sentence

All sitting. All concur.

13

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky
Office of the Attorney General