RENDERED: JUNE 25, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0263-DG

TERRELL HARRIS                                        APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2023-CA-0431
KENTON CIRCUIT COURT NO. 22-CR-00381

COMMONWEALTH OF KENTUCKY                      APPELLEE

**OPINION OF THE COURT BY JUSTICE GOODWINE**

**<u>REVERSING AND REMANDING</u>**

A Kenton County jury convicted Terrell Harris of tampering with a prisoner-monitoring device and of being a first-degree persistent felony offender. The trial court sentenced him to ten years' imprisonment. During the trial, Harris raised a *Batson*[1] challenge, which the trial court denied. The Court of Appeals affirmed. This Court granted discretionary review. After careful consideration, we reverse the Court of Appeals, vacate the Kenton Circuit Court's judgment and sentence, and remand for a new trial.

**<u>BACKGROUND</u>**

While on home incarceration, Harris was arrested on an outstanding warrant for failure to appear for drug testing, which was a bond condition.

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

When he was processed at the Kenton County Detention Center ("KCDC"), he was not wearing his ankle monitor. He was indicted for tampering with a prisoner-monitoring device and was subsequently indicted for being a first-degree persistent felony offender.

During the trial, the Commonwealth made a peremptory strike against Juror 4, the only African American on the venire. Harris's counsel challenged this under *Batson*. The Commonwealth argued it removed Juror 4 based on information from Sgt. Werner Stilt, the Commonwealth's witness and a KCDC employee who sat at the prosecutor's table during the trial.

The Commonwealth informed the court that Sgt. Stilt recognized Juror 4's name. Initially, the Commonwealth stated Sgt. Stilt believed Juror 4 might have shared a name with a former KCDC employee. Additionally, the prosecutor said he did not realize Juror 4 was the lone African American on the panel. The prosecutor said Sgt. Stilt was not sure if he knew Juror 4, and the strike was purely based on the name.

Harris's counsel pointed out that the Commonwealth presented no evidence that the juror was the same person, and Juror 4 did not respond when the Commonwealth asked the venire if anyone knew Sgt. Stilt. The prosecutor responded that he did not allege that Juror 4 was the same person. He reached the end of his strike list and asked Sgt. Stilt whether there was anyone else they would not want on the jury. Then, the Commonwealth claimed Juror 4 stared at him the entire time during voir dire.

2

After a recess, the trial court began to announce its decision, but the Commonwealth interjected. The prosecutor repeated his original explanation, and a second prosecutor suggested that Sgt. Stilt be examined. Sgt. Stilt informed the court that the juror's name jumped out at him because he had dealt with a former inmate of the same name. This contradicted the Commonwealth's explanation that Juror 4 shared a name with a former KCDC employee. He was not sure if the juror was the same person because he was bad with faces. Sgt. Stilt also stated that whenever he glanced toward the venire, he felt as if Juror 4 stared back at him. Juror 4 was not questioned about whether he knew Sgt. Stilt or about his demeanor.

The trial court denied Harris's *Batson* challenge. It found that Harris made a prima facie case of discrimination, but the Commonwealth presented a race-neutral reason for striking the juror. The trial court accepted the Commonwealth's explanation for striking Juror 4 after questioning Sgt. Stilt and noted Juror 4 did not respond when the Commonwealth asked the venire if anyone knew Sgt. Stilt. The trial court accepted the Commonwealth's explanation at face value. The court relied on the credibility of the prosecutors because the specific prosecutors frequently appeared in her court, and she had never seen them engage in racial discrimination.

The trial resumed, and the jury found Harris guilty of tampering with a prisoner monitoring device and being a first-degree persistent felony offender.

The trial court imposed the jury's recommended sentence of ten years' imprisonment.[2]

Harris appealed as a matter of right, and the Court of Appeals affirmed the trial court's judgment and sentence. The Court of Appeals determined that Harris made a prima facie showing that the peremptory strike was race-based because Juror 4 was the sole African American on the panel. The court then assessed the trial court's finding that the Commonwealth's reasons for striking Juror 4 were race-neutral. The appellate court acknowledged that although the Commonwealth's initial basis for the strike was incorrect, the proffered reasons were facially race-neutral because race is unrelated to whether Juror 4 was either a former KCDC employee or inmate.[3] It also determined Juror 4's alleged demeanor was race-neutral. Though demeanor alone might have been insufficient, the Commonwealth also relied on the juror perhaps having been an inmate. Additionally, the appellate court opined that although another court might not have accepted the Commonwealth's assertion that it did not realize the juror was African American when it struck him,[4] Harris did not show the trial court was required to do so.

---

[2] The Court takes judicial notice of the fact that Harris was paroled on April 1, 2025.

[3] We note that this statement in the Court of Appeal's opinion is factually incorrect. The Commonwealth and Sgt. Stilt never only claimed Juror 4 shared a name with a jail employee or former inmate.

[4] This statement is also factually incorrect. The Commonwealth stated it did not know Juror 4 was the sole African American on the venire.

4

Finally, the Court of Appeals determined that Harris failed to show an obvious pretext and did not meet his burden of proving purposeful discrimination. The appellate court opined that the trial court only needed to assess the demeanor of the prosecutors and jurors, so the trial court's denial of Harris's *Batson* challenge was not clearly erroneous.

Harris sought discretionary review. He argues the Court of Appeals erred in affirming the trial court's denial of his *Batson* challenge because the trial court accepted the Commonwealth's proffered explanations for striking Juror 4, which were based on vague information from an outside source and the Commonwealth's assertion that he did not know Juror 4 was the only African American on the venire.

## STANDARD OF REVIEW

In *Batson*, the Supreme Court of the United States held "[c]hallenging prospective jurors on the basis of race violates the Equal Protection Clause" and "outlined a three-step process for evaluating" a claim that a peremptory strike was based on race. *Washington v. Commonwealth*, 34 S.W.3d 376, 378–79 (Ky. 2000). "First, the defendant must make a prima facie showing of racial bias for the peremptory challenge. Second, if the defendant makes a prima facie showing, the burden shifts to the Commonwealth to articulate 'clear and reasonably specific' race-neutral reasons for its use of a peremptory challenge." *Id.* at 379. We review "the trial court's acceptance of the explanations proffered by the Commonwealth" for an "abuse of discretion." *Johnson v. Commonwealth*, 450 S.W.3d 696, 705 (Ky. 2014). "If the trial court decides that the facts

5

establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed." *Batson*, 476 U.S. at 100.

Finally, if the Commonwealth's proffered reason for the strike is deemed racially neutral, "the trial court has the duty to evaluate the credibility of the proffered reasons and determine if the defendant has established purposeful discrimination." *Washington*, 34 S.W.3d at 379. We give great deference to the trial court's decision on a *Batson* challenge because the weighing of the prosecutor's credibility is "within the trial judge's province[.] . . . This [d]eference, of course, does not mean that the appellate court is powerless to provide independent review. A trial court's [ultimate] ruling on a *Batson* challenge will not be disturbed unless clearly erroneous." *Ross v. Commonwealth*, 455 S.W.3d 899, 906 (Ky. 2015) (internal quotation marks and footnotes omitted).

We note that "a *Batson* violation is a structural error not subject to harmless error review." *Johnson*, 450 S.W.3d at 705.

Despite applying the same three-part test to *Batson* challenges, our case law is split on the level of scrutiny to be applied by trial courts in assessing the Commonwealth's proffered race-neutral explanation for the strike. *Snodgrass* and its progeny apply a lesser degree of scrutiny. *Commonwealth v. Snodgrass*, 831 S.W.2d 176, 179 (Ky. 1992) (citing *Hernandez v. New York*, 500 U.S. 352, 353 (1991)). The *Snodgrass* line allows trial courts to "accept at face value the explanation given by the prosecutor, depending upon the demeanor and

credibility of the prosecutor" without any further inquiry. *Id.*; *see e.g., Gray v. Commonwealth*, 203 S.W.3d 679, 691 (Ky. 2006); *Mash v. Commonwealth*, 376 S.W.3d 548, 556 (Ky. 2012); *Newcomb v. Commonwealth*, 410 S.W.3d 63, 82 (Ky. 2013).

Conversely, *Washington* and its progeny require trial courts to apply greater scrutiny in assessing the legitimacy of the Commonwealth's proffered explanation for the strike. *Washington*, 34 S.W.3d 376 at 379. The *Washington* line dictates that trial courts "cannot merely accept the reasons proffered at face value, but [they] must evaluate those reasons" in assessing whether the Commonwealth's explanations "are clear and reasonably specific." *Id.*; *see, e.g., Johnson*, 450 S.W.3d at 703; *Ross v. Commonwealth*, 455 S.W.3d 899, 908 (Ky. 2015); *Davis v. Commonwealth*, 620 S.W.3d 16, 29 (Ky. 2021).

"In spite of the lenient standards implied in" authorities in the vein of *Snodgrass*, "it is self-evident that, for" the second "step of *Batson* to have any significance at all, the expressed basis for the strike must rise above the level of an inexplicable *excuse* and reach, at least, to the level of a coherent reason for the strike." *Johnson*, 450 S.W.3d at 703. Under this line of cases, we only reach the third step of assessing the credibility of the Commonwealth's race-neutral explanation if the proffered basis for the strike is clear and reasonably specific.

As discussed in further detail below, we conclude that the *Washington* line of cases more accurately reflects the appropriate analysis to be applied in considering *Batson* challenges. As such, we overrule the *Snodgrass* line's lesser degree of scrutiny on the Commonwealth's proffered reason. We therefore

7

consider whether (1) the defendant made a prima facie showing of racial bias; (2) the Commonwealth has articulated "clear and reasonably specific" race-neutral reasons for the strike; and (3) the credibility of the Commonwealth's explanation.

**ANALYSIS**

## I.   Harris made a prima facie showing of racial bias.

First, Harris made "a prima facie showing of racial bias for the peremptory challenge." *Washington*, 34 S.W.3d at 379. The Commonwealth argues that a pattern of discrimination is required to make a prima facie showing of discrimination, but that is not what the law requires. "It is clear to this Court that all a defendant must show in raising a prima facie *Batson* case is an inference of racial discrimination in exercising a challenge to remove a juror from the venire, which then shifts the burden to the Commonwealth to provide a race-neutral explanation." *Roe v. Commonwealth*, 493 S.W.3d 814, 828 (Ky. 2015) (endorsing *Powers v. Ohio*, 499 U.S. 400 (1991) on this point and abrogating *Johnson* and *Blane v. Commonwealth*, 364 S.W.3d 140, 148 (Ky. 2012) to the extent that they required racial identity between the defendant and excluded juror). Juror 4 is African American, and the Commonwealth exercised a peremptory challenge to remove him from the venire. Though not required, we note that Harris is African American.

8

**II.** **The Commonwealth failed to articulate a clear and reasonably specific race-neutral reason for the peremptory strike.**

Second, because Harris made a prima facie showing of racial bias, the burden shifted to the Commonwealth to provide a "clear, reasonably specific[,] and legitimate *reason*" for striking the juror for the trial court to reach the third step of assessing "the plausibility of the proffered reason for striking the potential juror in light of all the evidence." *Johnson*, 450 S.W.3d at 703-04. The basis for the strike is legitimate only when a "case-related reason is attached to it." *Id.* at 705. The trial court cannot make a proper assessment if "the proponent of the peremptory strike [fails] to fully articulate the reason" for the strike. *Id.* at 704. Again, for this step to be a meaningful part of the *Batson* test, the Commonwealth's explanation must be more than an excuse and at least be coherent. *Id.* at 703.

The prosecutor asserted he exercised a peremptory challenge to strike Juror 4 based on Sgt. Stilt's assertion that he recognized Juror 4's name, he did not realize Juror 4 was the only African American on the panel, and Sgt. Stilt said Juror 4 stared at him during voir dire. For the reasons below, none of these explanations was clear and case-specific. We address each proffered explanation in turn.

The Commonwealth's first reason for striking Juror 4 was based on information provided by Sgt. Stilt, an outside source. It is well established that "prosecutors may exercise peremptory challenges based upon their own personal knowledge concerning a juror" and "information supplied from outside

9

sources. Whether the information is true or false is not the test." *Id.* at 704. Instead, "[the] test is whether the prosecutor has a good-faith belief in the information *and whether he can articulate the reason* to the trial court in a race-neutral manner which is not inviolate of the defendant's constitutional rights." *Id.*

Though we depart from *Snodgrass* to the extent that it applied a lesser degree of scrutiny to the Commonwealth's proffered race-neutral explanation, it is instructive on the issue of assessing the legitimacy of peremptory strikes based on outside information. In *Snodgrass*, the Commonwealth exercised a peremptory challenge to strike the only African American on the venire on the basis that the juror knew the defendant. *Snodgrass*, 831 S.W.2d at 177-78. The defendant raised a *Batson* challenge. *Id.* Earlier in voir dire, for reasons unknown, the juror failed to respond when the Commonwealth asked if anyone on the venire knew the defendant. *Id.* at 177. The Commonwealth explained that, prior to exercising peremptory strikes, he learned from an outside source that the juror knew the defendant, they lived near each other, and their families had "known each other for years." *Id.* at 178. The Commonwealth articulated that he struck the juror because he "felt like he would be a juror who would be most or would have some degree of sensitivity to Mr. Snodgrass and would have some concerns about returning to his neighborhood and facing the people if he were to sit on a jury that returned a verdict of guilty." *Id.* The Commonwealth further asserted that he would have exercised the same strike on anyone else who similarly knew the defendant. *Id.* The trial court found the

10

prosecutor "articulated a race-neutral explanation" and denied the *Batson* challenge. *Id.*

Because the same test applies to strikes based on the Commonwealth's personal knowledge and information supplied by an outside source, the Commonwealth is responsible for the veracity of outside source information. *Snodgrass*, 831 S.W.2d at 180. The Commonwealth must demonstrate that it had "a good-faith belief in the information *and . . . articulate the reason* to the trial court in a race-neutral manner." *Id.* at 180; *Johnson*, 450 S.W.3d at 704. This Court reasoned that the basis for the strike was race-neutral, as living near the defendant "may raise an inference of bias and cause a juror to be 'sensitive' to one party over another. This is pure human nature regardless of the race of the juror." *Id.* at 180.

Though the Commonwealth's explanation for striking the juror in *Snodgrass* was clearly articulated and case-related, *Snodgrass*'s lenient standard of accepting the prosecutor's explanation at face value, "depending upon the demeanor and credibility of the prosecutor," essentially combines the second and third steps of the analysis and renders the second step meaningless. Application of this standard ensures that nearly any denial of such a challenge will be upheld.

Furthermore, the *Snodgrass* Court rejected the Court of Appeals assertion that the Commonwealth should have further questioned the juror on "whether he knew [the defendant and his family] and whether he could consider the case objectively." *Id.* at 178. This Court held that "further

11

questioning of [the juror] by the Commonwealth or the trial court might well have reaffirmed the suspicions of the prosecutor, [but] we do not believe that either our Federal or State Constitutions required such inquiry, especially where the strike arises from a peremptory challenge." *Id.* at 180.

Conversely, the dissent reasoned that the juror's silence implied "that he did not know the defendant." *Id.* at 180. The dissent faulted the Commonwealth for failing to present the juror with information from the source during voir dire. *Id.* "Instead, the prosecutor relied exclusively on the *un*sworn statement of an informant, whom [] he failed to name." *Id.* The dissent would have held that "the trial court abused its discretion in ruling that the Commonwealth's Attorney's explanation was race-neutral, eschewing further inquiry which was clearly in order," and "the trial court's precipitous ruling was clearly erroneous." *Id.* at 180-81. We adopt the *Snodgrass* dissent's rationale and overrule the *Snodgrass* majority on this point. The Commonwealth must question the juror to determine whether there is a case-specific basis for the strike and not rely solely on outside sources.

In *Johnson*, the prosecutor gave his personal knowledge as one reason for the peremptory strike. The prosecutor asserted the excluded juror went to his high school, and he based the strike "upon her friends and associates and things like that I know of . . . based upon my knowledge of her friends and associates years ago." *Id.* at 704, 707. This Court determined that "[w]hatever the prosecutor knew about [the juror] (and her friends and associates) that may have provided a race-neutral rationale for excluding her from the jury,

12

remained known only to him" *Id.* at 704. The prosecutor "failed to give a single, specific example of how his knowledge of the juror translated into a reason other than race to disfavor her participation as a juror." *Id.* This Court held that the trial court abused its discretion in denying the defendant's *Batson* challenge because each of the prosecutor's proffered bases for striking the juror was a mere excuse and was not attached to any case-related reason for the strike. *Id.* at 705. The *Johnson* Court did not reach the final step because "the Commonwealth failed to provide a cognizable race-neutral reason for striking" the juror. *Id.* at 706. Thus, the only remedy for this structural error was "to vacate [a]ppellant's conviction and sentence and remand the case" to the trial court for a new trial." *Id.* at 706.

Here, the Commonwealth failed to meet its burden of providing a race-neutral basis for striking Juror 4. The trial court questioned Sgt. Stilt to verify the Commonwealth's explanation. Though his explanation differed from the Commonwealth's initial reasoning, the information need not be true. The Commonwealth failed to articulate how Juror 4 sharing a name with someone Sgt. Stilt knew from the jail translated into a race-neutral basis for striking him.

The Commonwealth's proffered reason that Juror 4 did not respond when the Commonwealth asked the venire whether anyone knew Sgt. Stilt is unpersuasive. Without the trial court or attorneys questioning Juror 4, we are unable to know why Juror 4 did not respond. Perhaps Juror 4 did not respond

13

because he did not know Sgt. Stilt. We cannot presume deception, and neither should the trial court.

We disagree with the Court of Appeals' discussion of Harris' silence and its assertion that defense counsel should have asked more specific questions to determine whether anyone on the venire recognized Sgt. Stilt. The onus is on the Commonwealth to question venire members about any concerns it has, and failure to do so suggests the explanation is a sham. *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005). The Commonwealth should have questioned Juror 4 to determine whether Juror 4 knew Sgt. Stilt to establish a good-faith belief in the information and that the explanation was race-neutral.

The Commonwealth failed to explain how Sgt. Stilt's recognition of Juror 4's name had any impact on whether he would be biased toward the defendant had he served on the jury. Setting aside our disagreement with *Snodgrass's* questioning of the juror, the proffered reason for the strike in *Snodgrass* was clear and reasonably case-specific. There, the Commonwealth explained that, based on outside information that the juror knew Snodgrass and lived near him, the juror could be biased toward him.

Here, the knowledge-based strike is analogous to *Johnson*. There, the prosecutor explained that he had gone to high school with the juror and had based his strike on his knowledge of the juror and her associates from years ago. This Court determined that the Commonwealth never explained why the prosecutor's knowledge of the juror meant she was unfit to serve on the jury in that case. Here, the Commonwealth's vague assertion that Sgt. Stilt recognized

14

Juror 4's name was unsupported by any explanation indicating any possible bias or any other reason why he should not serve on the jury in this case. Had the Commonwealth questioned Juror 4, it could have determined whether the information provided by Sgt. Stilt translated into a case-specific reason for striking Juror 4. Thus, name recognition alone was insufficient to establish a race-neutral basis for the strike because there was no connection to this specific case.

The prosecutor's second reason for striking Juror 4 was that he did not realize Juror 4 was the only African American on the jury. Harris argues that this explanation was vague and not case-specific. In *Washington*, defense counsel raised a *Batson* challenge, and the Commonwealth insisted he did not strike the juror until he was shown the strike sheet. *Washington*, 34 S.W.3d at 378. This Court determined the Commonwealth's initial denial, coupled with "his obvious surprise at the fact he had struck," the juror rendered "subsequent explanations for the strike . . . disingenuous." *Id.* at 379. This Court held the Commonwealth failed to articulate "a legally sufficient reason" for striking the juror. *Id.* at 379.

The Commonwealth may not "rebut the defendant's case merely by denying that he had a discriminatory motive or affirm[ing] [his] good faith in making individual selections." *Batson*, 476 U.S. at 98 (internal quotation marks omitted). If we accept general assertions such as this, "the Equal Protection Clause "would be but a vain and illusory requirement." *Id.* For the trial court to be able to determine whether "the defendant has established purposeful

15

discrimination," the Commonwealth must "articulate a neutral explanation related to the particular case to be tried." *Id.* We reiterate that such an explanation must include "clear and reasonably specific" race-neutral reasons for the strike. Where the Commonwealth fails to meet its burden of proof, the trial court's inquiry ends, and the *Batson* challenge must be granted. Thus, the Commonwealth's explanation that he did not know Juror 4 was the only African American on the panel does not survive constitutional muster.

The Commonwealth's third basis for striking Juror 4 was his demeanor. Harris argues that Juror 4 was simply looking at Sgt. Stilt was a naked assertion, unsupported by an explanation, that Juror 4 was unfit to serve on the jury. After the prosecutor proffered his first two reasons, defense counsel pointed out that there was no evidence that Sgt. Stilt knew Juror 4. Then, the Commonwealth claimed Juror 4 stared at Sgt. Stilt during voir dire. When questioned, Sgt. Stilt stated that whenever he looked over at the venire, Juror 4 looked back.

New explanations provided after defense counsel discredits the Commonwealth's initial basis for the strike "reek of afterthought." *Miller-El*, 545 U.S. at 246. The trial "court's readiness to accept the [Commonwealth's] substitute reason ignores . . . its pretextual timing." *Id.* "There is no good reason to doubt that [the Commonwealth's] afterthought about [Juror 4's demeanor] was anything but makeweight." *Id.* There, the Supreme Court faulted the prosecutor for failing "to engage in any meaningful voir dire

16

examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination." *Id.*

In *Washington*, the trial court initially rejected the Commonwealth's claim that the juror "appeared bored" during voir dire. *Washington*, 34 S.W.3d at 378. During a recess, the Commonwealth reiterated its reasons for the strike, and the trial court reversed its prior ruling and found that the juror's inattention was probably "sufficient reason to excuse the juror. I did observe that he was being somewhat inattentive." *Id.* This Court determined the Commonwealth's assertion that the juror appeared to be inattentive or bored was based on nothing more than a mere hunch because "no questions were directed toward him during voir dire." *Id.*

Here, the timing of the Commonwealth's demeanor argument was pretextual and is unsupported by a reasonably specific reason for the strike. Additionally, the Commonwealth informed the trial court that Sgt. Stilt said Juror 4 looked at him throughout voir dire, and, when questioned, Sgt. Stilt said Juror 4 stared back when Sgt. Stilt looked toward the venire. The Commonwealth failed to articulate why Juror 4's staring at Sgt. Stilt made him unfit to serve on the jury. If Juror 4 stared at Sgt. Stilt, the Commonwealth should have questioned Juror 4 to discern whether his demeanor was a race-neutral basis for striking him. Without more, the Commonwealth's explanation was based on nothing more than a hunch. Thus, Juror 4's demeanor was not a valid race-neutral basis for the peremptory strike.

17

The Commonwealth's reasons for striking Juror 4 were vague and unsupported by "some rationale to discern a non-racial motivation." *Johnson*, 450 S.W.3d at 704. For the Commonwealth to meet its burden of establishing a race-neutral basis for a peremptory strike, it must explain why the proffered reason indicates that the juror should not serve on the jury in the case being tried. Without this critical connection, the strike cannot survive a *Batson* challenge. Thus, the trial court abused its discretion in finding the Commonwealth's peremptory strike was race-neutral. To hold otherwise would render *Batson* largely meaningless.

**III.    Because the proffered reasons were not race-neutral, we do not reach credibility and purposeful discrimination.**

Without a cognizable race-neutral basis for striking Juror 4, the trial court lacked the information necessary to perform its duty of evaluating the credibility of the Commonwealth's proffered reasons and deciding the ultimate question of whether Harris established discriminatory intent. Because we now definitely place greater weight on the Commonwealth's proffered reason for exercising a peremptory strike, and a *Batson* violation is a structural error, we do not reach the final step of the analysis.

We note that this opinion does not serve to chastise the trial court or the Commonwealth. We pass no judgment on the Commonwealth's credibility or racial bias or animus. Had we reached this final step, we would have deferred to the trial court, as it is best positioned to determine that the Commonwealth has no racial animus. This Court's precedent has been applied inconsistently

18

to the *Batson* test for decades, and the trial court made a good-faith effort to conduct a *Batson* analysis in the absence of clear guidance. For these reasons, this opinion clarifies what is required for a peremptory strike to survive a *Batson* challenge and provides clear guidance to trial courts and practitioners.

## CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals, vacate Kenton Circuit Court's judgment and sentence, and remand for a new trial.

All sitting. Lambert, C.J.; Bisig, Conley, Nickell, and Thompson, JJ., concur. Keller, J., concurs in result only.

COUNSEL FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General